1  JOHN L. BURRIS, Esq./ State Bar #69888
   BENJAMIN NISENBAUM, Esq./ State Bar #222173
2  LAW OFFICES OF JOHN L. BURRIS
   7677 Oakport Street, Suite 1120
3  Oakland, California 94621
   Telephone:   (510) 839-5200
4  Facsimile:    (510) 839-3882

5  Attorneys for Plaintiffs

6
                    UNITED STATES DISTRICT COURT
7
              FOR THE EASTERN DISTRICT OF CALIFORNIA
8

9  V.W., a minor, by and through her Guardian Ad Litem, )
   Tenaya Barber, Individually and as Successor in          )  Case No. 2:12-cv-01629-LKK-GGH
10 Interest of Decedent MICHAEL WHITE,                      )
                                                            )
11          Plaintiffs,                                     )  **FIRST-AMENDED COMPLAINT**
                                                            )  **FOR DAMAGES AND DEMAND**
12    vs.                                                   )  **FOR JURY TRIAL**
                                                            )
13 ROBERT NICHELINI, individually; BARRY                    )
   BOERSMA, individually; RAUL MUNOZ,                       )
14 individually; HERMAN ROBINSON, individually;             )
   JOHN CUNNINGHMAN, individually; MIKE                     )
15 KOUTNIK, individually; and DOES 6-25, individually,)
                                                            )
16          Defendants.                                     )
                                                            )
17                                                          )

FIRST-AMENDED COMPLAINT                                                               1

## JURISDICTION

1. This is a civil rights wrongful death/survival action arising under Title 42 of the United States Code, Sections 1983 and 1988, and Fourth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by Title 28 of the United States Code, Sections 1331 and 1343. Plaintiffs further invoke the supplemental jurisdiction of this Court pursuant to Title 28 of the United States Code, Section 1367, to hear and decide claims arising under state law. The amount in controversy herein, excluding interest and costs, exceeds the minimum jurisdictional limit of this Court.

## INTRADISTRICT ASSIGNMENT

2. A substantial part of the events and/or omissions complained of herein occurred in the County of Solano, California, and this action is properly assigned to the Sacramento Division of the United States District Court for the Eastern District of California.

## PARTIES AND PROCEDURE

3. Minor Plaintiff herein, V.W., ("Plaintiff" herein), is and was at all times herein mentioned the daughter of Decedent MICHAEL WHITE and a resident of the State of California. She is being represented in this action by her mother and Guardian Ad Litem, Tenaya Barber. She brings these claims individually and as successor in interest for Decedent MICHAEL WHITE.

4. Plaintiff brings these claims pursuant to California Code of Civil Procedure sections 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings her claims individually and on behalf of Decedent MICHAEL WHITE on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, and federal and state civil rights law.

5. Defendant Chief ROBERT NICHELINI ("NICHELINI"), at all times mentioned herein, was employed by the City of Vallejo as Chief of Police for the CITY, and was acting within the course and scope of that employment. He is being sued individually. Plaintiff alleges he personally participated in promulgating the policies and practices, and ratification of misconduct of the individual Defendant Officer BARRY BOERSMA, RAUL MUNOZ, HERMAN ROBINSON, and JOHN CUNNINGHAM, herein.

6. Defendant BARRY BOERSMA ("BOERSMA"), at all times mentioned herein, was employed by the City of Vallejo as a police officer, and was acting within the course and scope of that employment.  He is being sued in his individual capacity.

7. Defendant RAUL MUNOZ ("MUNOZ"), at all times mentioned herein, was employed by the City of Vallejo as a police officer, and was acting within the course and scope of that employment. He is being sued in his individual capacity.

8. Defendant HERMAN ROBINSON ("ROBINSON"), at all times mentioned herein, was employed by the City of Vallejo as a police officer, and was acting within the course and scope of that employment. He is being sued in his individual capacity.

9. Defendant JOHN CUNNINGHAM ("CUNNINGHAM"), at all times mentioned herein, was employed by the City of Vallejo as a police officer, and was acting within the course and scope of that employment. He is being sued in his individual capacity.

10. Defendant MIKE KOUTNIK ("KOUTNIK"), at all times mentioned herein, was employed by the City of Vallejo as a police officer, and was acting within the course and scope of that employment. He is being sued in his individual capacity.

11. Defendant DOES 6-25 were each at all times herein mentioned police officers employed by the City of Vallejo, and each was acting within the course and scope of that employment.

12. Plaintiffs are ignorant of the true names and capacities of Defendants DOES 5 through 25, inclusive, and therefore sue these Defendants by such fictitious names.  Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein.  Plaintiffs will amend their complaint to state the names and capacities of DOES 5-25, inclusive, when they have been ascertained.

13. In engaging in the conduct described herein, Defendant Officers acted under the color of law and in the course and scope of their employment with the City.  In engaging in the conduct described herein, Defendant Officers exceeded the authority vested in them as peace officers under the United States and California Constitutions and as police officers employed by the City.

14. Plaintiffs are informed and believe and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter

ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship.  Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged.  At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiffs' constitutional rights and other harm.

15. The acts and omissions of all Doe Defendants as set forth herein were at all material times pursuant to the actual customs, policies, practices and procedures of the City of Vallejo and the Vallejo Police Department.

16. At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California.

17. Each Plaintiff timely and properly filed tort claims pursuant to California Government Code sections 910 et seq., and this action is timely filed within all applicable statues of limitation.

18. This complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d).

**GENERAL ALLEGATIONS**

19. Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

20. On June 15, 2010, at about 4:24 p.m., in the City of Vallejo, Vallejo Police Department Officers, including, but not limited to, Defendants BOERSMA, MUNOZ, ROBINSON, and CUNNINGHAM responded to a 911 call. Defendant Officers made contact with Decedent MICHAEL WHITE where he lived at a friend's house who lives directly across the street from the person who called 911.  Defendants entered the home of Decedent's friend, where Decedent was locked inside a bathroom.  Defendants contacted Decedent and at least Defendants BOERSMA, MUNOZ and CUNNINGHAM tased decedent repeatedly and in a prolonged manner while restraining decedent.  Decedent was subdued during the restraint and tasing, which lasted several minutes.  Defendant BOERSMA applied a carotid restraint to Decedent during the restraint. Defendant KOUTNIK arrived at some point, and also participated in the unreasonable and excessive restraint of Decedent.  The restraint of Decedent, conducted while decedent was in a prone position,

included weight force compression of Decedent's back and chest area, which impaired Decedent's ability to breathe.  The tasting of Decedent occurred in proximity to the heart.

21.     Defendants claimed that Decedent was swallowing drugs, but that claim was revealed to be untrue when Decedent's body was examined at the hospital shortly after the subject-incident. Though Decedent's blood tested presumptively positive for cocaine intoxication, there was no evidence that Decedent had any object or obstruction in his airway, and no remnants of any object or obstruction, or any drugs whatsoever, were present.

22.     Defendants BOERSMA, MUNOZ, ROBINSON, CUNNINGHAM and KOUTNIK used excessive force against Decedent, including unreasonable restraints and the unreasonable use of and unreasonably prolonged exposure to the Taser.  Decedent collapsed during the restraint and tasing.  Defendant CUNNINGHAM first noticed that Decedent was not breathing properly after Defendant BOERSMA applied the carotid restraint.  Decedent posed no threat of serious physical harm to anyone prior to or during the restraint. The restraint of Decedent continued excessively even after Decedent was handcuffed.

23.      Decedent was carried out of the residence by Defendants, in handcuffs and a hobble, and placed on a stretcher, where Decedent lost all vital signs of life.  Decedent may have lost vital signs of life before then, but at a minimum exhibited inconsistent vital signs of life. Decedent ultimately was pronounced dead at Kaiser Hospital in Vallejo as a consequence of the unreasonable use of force, including excessive tasing and unreasonable restraint and excessive force.

24.     The City of Valljeo later claimed Decedent died from "Excited Delirium," and was exhibiting signs of so-called "Excited Delirium" when Defendant Officers responded to Decedent. Prior to the subject-incident, Taser International specifically warned all of its users against prolonged exposure to the Taser in people suffering symptoms of so-called "Excited Delirium."  In fact, death by "Excited Delirium" has been cited as an alternative to asphyxiation during the course of restraint. "Excited Delirium" deaths are preventable, and reasonable police officers are trained to consider the symptoms of "Excited Delirium" when restraining, using a taser, or otherwise using force against a subject. In this case, Defendants unreasonably disregarded any symptoms of alleged Excited Delirium Decedent may have been exhibiting, if any.  Decedent did not die from Excited Delirium, but from asphyxiation and excessive or unreasonable tasing.

FIRST-AMENDED  COMPLAINT                                                                                                    5

25. Decedent was vastly outnumbered by defendants, at least 4 to 1, and never posed a serious or immediate threat to any person.

26. The type and amount of force Defendants used against Decedent as described herein, including multiple Taser shocks, improper restraint, and an unreasonable carotid restraint, amounted to the use of deadly force under the circumstances.  The use of deadly force was not justified or lawful under the circumstances.

27. Alternatively, or concurrently, Defendants own excessive, unreasonable, reckless, and provocative actions created a risk of harm to Decedent, created the situation in which Defendants used extreme force, and caused an escalation of events leading to Decedent's death.

28. Defendants' unreasonable restraint and use of excessive force against Decedent was done at least in part because of Decedent's untreated serious medical needs and/or psychiatric condition.

29. Plaintiffs are informed and believe and thereon allege that asphyxiation of individuals during restraint is well-documented and generally accepted such that law enforcement agencies as a matter of routine train their peace officer personnel, such as Defendants BOERSMA, MUNOZ, , in avoiding asphyxiation of individuals during restraint.

30. Plaintiffs further allege that Defendants were on notice that prolonged or continuous exposure(s) to the Taser devices's electrical discharge has been proven to cause severe injury and death.  In fact, Taser International, the manufacturer of the Taser, issued a warning bulletin to law enforcement agencies published on or about August 28, 2006, and on other occasions, specifically warning Taser users to avoid prolonged, continuous, extended, or repeated Taser applications against people.  The same warning bulletin specifically noted that in laboratory tests on anesthetized pigs, repeated Taser exposure caused cessation of breathing during the exposure.  Likewise, the same warning bulletin specifically noted that people who displayed symptoms of exhaustion or an alleged syndrome called 'excited delirium,' may be at risk of breathing impairment caused by exposure to the Taser.

31. Defendants grossly violated the training and standards for proper and safe restraint of a person, and in using the Taser repeatedly, and in use of force, and in a prolonged manner in their misconduct against Decedent.

32. Decedent's death was the result of the unreasonable seizure and restraint, use of excessive force, conduct without a legitimate law enforcement purpose, and cruel and unusual punishment by Defendants DOES, who were each familiar with Decedent from prior incidents.

33. Alternatively or concurrently, Decedent's death was the proximate result of Defendant Chief NICHELINI'S failure to reasonably train their police officers in the proper and reasonable use of force, failure to implement and enforce generally accepted, lawful policies and procedures of use of force, and allowing and/or ratifying excessive and unreasonable force and restraint, and deliberate indifference to the serious medical/psychiatric needs of subjects.  These substantial failures reflect the City and NICHELINI's policies implicitly ratifying and/or authorizing the use of excessive and unreasonable force and restraint by its police officers and the failure to reasonably train, instruct, monitor, supervise, investigate, and discipline police officers employed by the CITY Defendant NICHELINI in the use of force.

34. At all material times, and alternatively, the actions and omissions of each Defendant were intentional, wanton, and/or willful, conscience-shocking, reckless, malicious, deliberately indifferent to Decedent's and Plaintiffs' rights, done with actual malice, grossly negligent, negligent, and objectively unreasonable. The killing of Decedent described herein was brutal, malicious, and done without just provocation or cause, proximately causing Plaintiff's injuries and resulting damages.

35. Vallejo Corporal John Garcia was a lead investigator assigned by Defendant NICHELINI to investigate the death of Decedent MICHAEL WHITE.  Corporal Garcia is known by Defendant NICHELINI to have previously prepared a false police report while attempting to cover up the basis for which a Vallejo police dog bit a woman named Georgia Mae Garrott in the City of Vallejo. In that case, Corporal Garcia secretly recorded a conversation he had with Ms. Garrott while she was in the hospital being treated for the dog bite.  Corporal Garcia attempted to cajole Ms. Garrott to wrongly admit that her boyfriend, Henry Leonard, had been "fighting" the police when the dog bit Ms. Garrott.  Ms. Garrott refused to agree to that description, despite Corporal Garcia's repeated efforts to wrongfully solicit her acquiescence to the false description, among other material matters. Corporal Garcia subsequently prepared a police report in which false recounted Ms. Garrott's statement, lying in the police report that she said Mr. Leonard had been "fighting" the

police.  In fact, as the secret recording subsequently obtained by Plaintiff's instant counsel revealed, Ms. Garrott said exactly the opposite of what Corporal Garcia falsely claimed in his report.  Though the report attributed this statement as having been taken from Ms. Garrott while she was in the hospital, Corporal Garcia later falsely claimed in a deposition of the matter, that Ms. Garrott had actually given him the "fighting" account at a separate, undocumented, time and location.  At the time of Corporal Garcia's deposition in that matter, he actually taught report writing to Vallejo Police Department officers.  Defendant NICHELINI was the Chief of Police for Vallejo at the time of the Garrott incident, and through the time of this subject-incident. At Defendant NICHELINI's deposition in the Garrott matter the false report prepared by Corporal Garcia was brought to NICHELINI's attention. NICHELINI at that time planned no discipline or any other intervention or remedial action with respect to Corporal Garcia's fraudulent statement. He endorsed the wrongdoing by Corporal Garcia. It appears Corporal Garcia has risen in the ranks of the Vallejo Police Department under Defendant NICHELINI's watch since that incident.  Defendant NICHELINI has a history of ratifying false statements and reports made to cover-up wrongdoing by fellow Vallejo Police Department officer who he supervises.

36.   As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, Plaintiff sustained the following injuries and damages, past and future, among others:

    a.   Wrongful death of MICHAEL WHITE;

    b.   Hospital and medical expenses;

    c.   Coroner's fees, funeral and burial expenses;

    d.   Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support;

    e.   Loss of economic support;

    f.   Violation of constitutional rights;

    g.   Emotional distress;

    h.   MICHAEL WHITE's loss of life, pursuant to federal civil rights law;

       i.    MICHAEL WHITE's conscious pain, suffering, and disfigurement, pursuant to federal civil rights law;

       j.    All damages and penalties recoverable under 42 U.S.C. §§ 1983 and 1988, and as otherwise allowed under California and United States statutes, codes, and common law.

## FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983)
### AGAINST DEFENDANTS BOERSMA, MUNOZ, ROBINSON, CUNNINGHAM, KOUTNIK, and DOES 6-15

37.    Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

38.    By the actions and omissions described above, Defendants **BOERSMA, MUNOZ, ROBINSON, CUNNINGHAM, KOUTNIK, and DOES 6-15** violated 42 U.S.C. § 1983, depriving Plaintiff of the following clearly established and well-settled constitutional rights protected by the First, Fourth, and Fourteenth Amendments to the United States Constitution:

       a.    The right to be free from unreasonable searches and seizures, as secured by the Fourth and Fourteenth Amendments;

       b.    The right to be free from excessive and unreasonable force and restraint in the course of search and seizure as secured by the Fourth and Fourteenth Amendments;

       c.    The right to be free from unlawful conscience shocking force as secured by the Fourteenth Amendment; and

       d.    The right to be free from wrongful government interference with familial relationships and Plaintiffs' right to companionship, society, and support of each other, as secured by the First, Fourth, and Fourteenth Amendments, and as secured by California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq.

39.    Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiffs (individually and on behalf of MICHAEL WHITE) and others would be violated by their acts and/or omissions.

40. As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages as set forth herein.

41. The conduct of Defendants BOERSMA, MUNOZ, ROBINSON, CUNNINGHAM, KOUTNIK, and DOES 6-15 entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and California Code of Civil Procedure §§ 377.20 et seq., and other state and federal law.  Plaintiffs do not seek punitive damages against municipal defendants.

42. Plaintiffs are also entitled to reasonable costs and attorneys fees under 42 U.S.C. § 1988 and applicable California codes and laws.

## SECOND CAUSE OF ACTION
### (*Monell* - 42 U.S.C. § 1983)
### ALL PLAINTIFFS AGAINST DEFENDANTS NICHELINI, AND DOES 16-25

43. Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

44. The unconstitutional actions and/or omissions of Defendants BOERSMA, MUNOZ, ROBINSON, CUNNINGHAM, KOUTNIK, and DOES 6-15, as well as other officers employed by or acting on behalf of the City of Vallejo, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Defendant NICHELINI, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for the City and its Police Department, through Defendant NICHELINI and DOES 16-26:

    a. To use or tolerate the use of excessive and/or unjustified force;

    b. To use or tolerate the use of unlawful deadly force;

    c. To engage in or tolerate unreasonable seizures and restraints;

    d. To engage in or tolerate the improper and dangerous misuse of the Taser;

    e. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning seizures and the use of control holds and restraint techniques, including avoiding asphyxiation of subjects being restrained by police officers and avoiding blows to a subject's head and/or neck during altercations absent justification;

      f.      To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning the Taser;

      g.      To fail to use appropriate and generally accepted law enforcement procedures for handling mentally ill and/or emotionally disturbed persons;

      h.      To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling mentally ill and/or emotionally disturbed persons; ;

      k.      To cover up violations of constitutional rights by any or all of the following:

          i.      By failing to properly investigate and/or evaluate complaints or incidents of excessive and unreasonable force, unlawful seizures, and/or handling of mentally ill and/or emotionally disturbed persons;

          ii.      By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful law enforcement activity; and

          iii.      By allowing, tolerating, and/or encouraging law enforcement officers to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful law enforcement conduct by withholding and/or concealing material information;

      l.      To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and police department personnel, whereby an officer or member of the police department does not provide adverse information against a fellow officer or member of the department; and

      m.      To use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and reviewing complaints of officer misconduct, including claims made under California Government Code §§ 910 et seq.

45.    Defendants NICHELINI, and DOES 16-25 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants BOERSMA, MUNOZ, ROBINSON, CUNNINGHAM, and KOUTNIK, and other Police Department personnel, with deliberate indifference to Plaintiffs' constitutional rights, which were thereby violated as described above.

46. The unconstitutional actions and/or omissions of Defendants BOERSMA, MUNOZ, ROBINSON, CUNNINGHAM, KOUTNIK, and DOES 6-15 and other Police Department personnel, as described above, were approved, tolerated, and/or ratified by policymaking officers for the City of Vallejo and its Police Department, including Defendant Chief NICHELINI.  Plaintiffs are informed and believe and thereon allege that the details of this incident have been revealed to the authorized policymakers within the City of Vallejo and the Vallejo Police Department and that such policymakers have direct knowledge of the fact that the death of MICHAEL WHITE was not justified, but rather represented an unconstitutional display of unreasonable, excessive and deadly force, as well as cruel and unusual punishment.  Notwithstanding this knowledge, the authorized policymakers within the Cityand its Police Department, including Defendant NICHELINI, have approved of BOERSMA, MUNOZ, ROBINSON, CUNNINGHAM, KOUTNIK, and DOES 6-15 use of unreasonable force and restraint of Decedent MICHAEL WHITE, and have made a deliberate choice to endorse Defendants' killing of MICHAEL WHITE, as well as the basis for that killing.  By so doing, the authorized policymakers within the City and its Police Department, including Defendant NICHELINI, have shown affirmative agreement with the individual Defendant Officers' actions and have ratified the unconstitutional acts of the individual Defendant officers.

47. The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants CITY, NICHELINI, and DOES 16-25 were a moving force and/or a proximate cause of the deprivations of Plaintiffs' clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above in paragraph 38.

48. Defendants subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiffs and others would be violated by their acts and/or omissions.

49. As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants NICHELINI, and DOES 16-25 as described above, Plaintiffs sustained serious and permanent injuries and are entitled to damages, penalties, costs, and attorneys fees as set forth above, and punitive damages against Defendants NICHELINI and DOES 21-25 in their individual capacities.

### THIRD CAUSE OF ACTION
### (Violation of Civil Code § 52.1)
### ALL PLAINTIFFS AGAINST ALL DEFENDANTS

50. Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

51. By their acts, omissions, customs, and policies, each Defendant acting in concert/conspiracy, as described above, and with threats, intimidation, and/or coercion, violated Plaintiffs' rights under California Civil Code § 52.1 and the following clearly established rights under the United States Constitution and California Constitution:

    a. The right to be free from unreasonable searches and seizures, as secured by the Fourth and Fourteenth Amendments;

    b. The right to be free from excessive and unreasonable force and restraint in the course of search and seizure as secured by the Fourth and Fourteenth Amendments;

    c. The right to be free from unlawful conscience shocking force as secured by the Fourteenth Amendment;

    d. The right to be free from wrongful government interference with familial relationships and Plaintiffs' right to companionship, society, and support of each other, as secured by the First, Fourth, and Fourteenth Amendments, and as secured by California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq.

     e.    The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, Section 1;

     f.    The right to life, liberty, and property and not to be deprived of those without due process of law, as secured by the California Constitution, Article 1, Section 7;

     g.    The right to be free from unlawful and unreasonable seizure of one's person, including the right to be free from unreasonable or excessive deadly force, as secured by the California Constitution, Article 1, Section 13; and

     h.    The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43.

52. As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Plaintiffs' rights under the United States and California Constitutions, Plaintiffs sustained injuries and damages, and against each and every Defendant are entitled to relief as set forth above, and punitive damages against all individual Defendants, including all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys fees, and civil penalties.

**FOURTH CAUSE OF ACTION**
**(Negligence)**
**ALL PLAINTIFFS AGAINST ALL DEFENDANTS**

53. Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

54. At all times, each Defendant owed Plaintiffs the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

55. At all times, each Defendant owed Plaintiffs the duty to act with reasonable care.

56. These general duties of reasonable care and due care owed to Plaintiffs by all Defendants include but are not limited to the following specific obligations:

     a.    To refrain from using excessive and/or unreasonable force against Decedent MICHAEL WHITE;

     b.    To refrain from unreasonably creating the situation where force, including but not limited to deadly force, is used;

      c.      To refrain from unreasonably creating danger or increasing Decedent's risk of harm;

      d.      To use generally accepted law enforcement procedures and tactics that are reasonable and appropriate for Decedent's status as an addicted, mentally ill and/or emotionally disturbed person with serious medical needs;

      e.      To refrain from abusing their authority granted them by law;

      f.      To refrain from violating Plaintiffs' rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

57. Additionally, these general duties of reasonable care and due care owed to Plaintiffs by Defendant CHIEF NICHELINI include but are not limited to the following specific obligations:

      a.      To properly and adequately hire, investigate, train, supervise, monitor, evaluate, and discipline their employees, agents, and/or law enforcement officers to ensure that those employees/agents/officers act at all times in the public interest and in conformance with the law;

      b.      To make, enforce, and at all times act in conformance with policies and customs that are lawful and protective of individual rights, including Plaintiffs';

      c.      To refrain from making, enforcing, and/or tolerating the wrongful policies and customs set forth above.

58. Defendants, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiffs.

59. As a direct and proximate result of Defendants' negligence, Plaintiffs sustained injuries and damages, and against each and every Defendant are entitled to relief as set forth above, and punitive damages against all individual Defendants.

### FIFTH CAUSE OF ACTION
### (Assault and Battery)
**ALL PLAINTIFFS AGAINST DEFENDANTS BOERSMA, MUNOZ, ROBINSON, CUNNINGHAM, KOUTNIK, and DOES 6-15**

60. Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

61. Defendants BOERSMA, MUNOZ, ROBINSON, CUNNINGHAM, KOUTNIK, and DOES 6-15, inclusive, placed Plaintiffs' Decedent in immediate fear of death and severe bodily harm, and killed him by beating and him without just provocation or cause, constituting assault and battery.

62. These defendants' conduct was neither privileged nor justified under statute or common law.

63. As a direct and proximate result of Defendants' assault and battery of Plaintiffs' Decedent, Plaintiffs sustained injuries and damages and are entitled to relief as asset forth above, and punitive damages against all individual Defendants in their individual capacities.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests the following relief against each and every Defendant herein, jointly and severally:

   a. Compensatory and exemplary damages in an amount according to proof and which is fair, just, and reasonable;

   b. Punitive damages under 42 U.S.C. § 1983 and California law in an amount according to proof and which is fair, just, and reasonable;

   c. All other damages, penalties, costs, interest, and attorneys fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5; California Civil Code §§ 52 et seq., 52.1; and as otherwise may be allowed by California and/or federal law;

   d. Declaratory and injunctive relief, including but not limited to the following:

      i. An order prohibiting Defendants and their police officers from unlawfully interfering with the rights of Plaintiff and others to be free from unreasonable seizures and restraints and excessive and unreasonable force;

      ii. An order requiring Defendants to institute and enforce appropriate and lawful policies and procedures for the safe use of Tasers;

      iii. An order requiring Defendants to institute and enforce appropriate and lawful policies and procedures for handling addicted, mentally ill and/or emotionally disturbed persons, and/or persons with serious medical needs;

       iv.     An order prohibiting Defendants and their police officers from engaging in the "code of silence" as may be supported by the evidence in this case;

       v.     An order requiring Defendants to train all police officers concerning generally accepted and proper tactics and procedures for the use of deadly force, the use of Tasers, and the handling of addicted, mentally ill and/or emotionally disturbed persons, and/or persons with serious medical needs and this Court's orders concerning the issues raised in injunctive relief requests i-iv, above.

  e.    Such other and further relief as this Court may deem appropriate.

## JURY DEMAND

Plaintiffs hereby demand a jury trial in this action.

Dated:  October 25, 2013                           **THE LAW OFFICES OF JOHN L. BURRIS**

                                                 /s/ *Benjamin Nisenbaum*
                                                 Ben Nisenbaum
                                                 Attorney for Plaintiffs