*Gary M. Vilke, M.D., FACEP, FAAEM*
*11279 Breckenridge Way*
*San Diego, California 92131*
*(619) 666-8643*

February 2, 2016

Sean Conley
Gibbons & Conley
Attorneys at Law
2185 N. California Blvd., Suite 285
Walnut Creek, CA 94596

RE:  V.W, minor v. City of Vallejo et al
     Case No. 2:12-CV-01629-LKK-AC

Dear Mr. Conley:

Since authoring my initial report dates, January 9, 2016, I have reviewed additional materials pertaining to this case. This includes:

1. Plaintiff's Expert Witness Designations (FRCP 26)

2. Defendants' Disclosure of Expert Testimony Under Rule 26(a)(2).

**Overview of Opinions**
**(All opinions within this report are to a reasonable degree of medical or**
**scientific certainty and probability)**

This supplemental report will define additional opinions based on the review of these new materials. The additional materials I have reviewed do not alter my original opinions outlined in my January 9, 2016 report. An overview of my supplemental opinions is as follows:

1. *Dr. Spitz's description of the impact on breathing of handcuffing overweight individuals behind their backs and placing them on their stomachs is inaccurate and not supported by the medical literature.*

2. *The "classic elements of positional asphyxia" as outlined by Dr. Spitz are inaccurate.*

3. *Dr. Spitz is incorrect when he reports that, "the term excited delirium is an unproven, unrecognized theory. It is not listed in any of the accepted usual authoritative sources of reference..."*

4. *I disagree with Dr. Spitz when he suggests that death in excited delirium only occurs in the prone position when he writes, "If ED where (sic) the cause of death, why then does it occur exclusively during restraint in the prone position, with compression causing immobilization of the chest and abdomen when the abdominal organs are pushed against the diaphragm."*

5. *I disagree with Dr. Spitz when he opines that, "Michael White experienced conscious pain and suffering and the fear of impending doom during the restraint and while he was unable to breathe, fighting for air, suffering air hunger from being held down in prone position ..."*

6. *I disagree with Dr. Spitz when he opines that, "Michael White had a mildly enlarged heart, indicating elevated blood pressure, which in my opinion played no role in this case."*

7. *I disagree with Dr. Spitz when he opines referring to the enlarged heart that, "With medical treatment, this condition would not necessarily reduce his life expectancy currently estimated at 80 years based on the major life insurance companies' tables and the CDC."*

**Detailed discussion and basis of supplemental opinions**

1. *Dr. Spitz's description of the impact on breathing of handcuffing overweight individuals behind their backs and placing them on their stomachs is inaccurate and not supported by the medical literature.*

There is no scientific basis to support the concept that placing an overweight person on his stomach will cause respiratory compromise, with or without hands being handcuffed behind ones back. In fact, there are studies involving overweight individuals that show that there are no clinically significant differences in ventilatory function in these positions. Dr. Spitz describes the abdominal contents pushing up on the diaphragm because the organs cannot move downward due to the boney pelvis. He completely neglects the fact that overweight subjects who are face down have the abdominal contents move out laterally toward the sides, allowing for the diaphragm and other

breathing muscles to function. Thus, one will not have reduced oxygenation of the blood and reduced oxygen getting to the brain, heart and other organs, as he opines. There are no human studies in subjects like Mr. White to support Dr. Spitz's opinion.

### 2. *The "classic elements of positional asphyxia" as outlined by Dr. Spitz are inaccurate.*

The classic elements of "positional asphyxia" as reported in the forensic literature and originally written about by Dr. Donald Reay involved individuals placed in the prone maximal restraint position, a prone position with hands cuffed behind the back and legs hobbled and pulled up and clipped to the handcuffs in a hogtie position. The classic description of positional asphyxia was that a person left in this position would asphyxiate over time. The classic description has no elements of "pinning with pressure of an obese body to the ground", "timely relationship between restraint and loss of consciousness/death", "history of delirious, delusional behavior," or "conditions which require increased oxygen availability..." as written by Dr. Spitz. Additionally, the classic positional asphyxia theory as causing ventilatory effects and death was ultimately debunked by subsequently published scientific research papers. (Reay DT: Death in custody. Clinics Laboratory Medicine 1998; 18(1):1-22).

### 3. *Dr. Spitz is incorrect when he reports that, "the term excited delirium is an unproven, unrecognized theory. It is not listed in any of the accepted usual authoritative sources of reference..."*

The term "excited delirium" is in fact recognized by the National Association of Medical Examiners (NAME), one of the major national groups for medical examiners. I find this interesting as this was accepted by NAME decades ago, and Dr. Spitz lists on his CV as being a member of the board of directors for NAME but appears not familiar with this. Additionally, the American College of Emergency Physicians (ACEP), the largest national group of emergency physicians representing

over 32,000 physicians also accepts excited delirium as a true diagnosis. These are the two groups of physicians most likely to encounter individuals suffering from this disease.

> **4. I disagree with Dr. Spitz when he suggests that death in excited delirium only occurs in the prone position when he writes, "If ED where (sic) the cause of death, why then does it occur exclusively during restraint in the prone position, with compression causing immobilization of the chest and abdomen when the abdominal organs are pushed against the diaphragm."**

Patients have died of excited delirium (ED) when found to be in the supine position, sitting position as well as prone positions without weight placed on them. There have been no epidemiological studies looking at rates of death in excited delirium or the positions that they are in when they go into cardiac arrest and die. However, there are case reports that document subjects dying in other positions as well as my own personal experience in the emergency department. Though exact percentages of people not in prone position cannot be determined, Dr. Spitz reporting that death occurs "exclusively during restraint in the prone position" is incorrect.

> **5. I disagree with Dr. Spitz when he opines that, "Michael White experienced conscious pain and suffering and the fear of impending doom during the restraint and while he was unable to breathe, fighting for air, suffering air hunger from being held down in prone position ..."**

There is no medical basis to support that Dr. Spitz knows what Mr. White was feeling or experiencing during the encounter with law enforcement. Mr. White was delirious and intoxicated with cocaine at the time of his encounter. He was most likely not sensing any pain or suffering due to his altered sensorium. I have taken care of hundreds, if not thousands of intoxicated individuals in the emergency department over the years who present altered and delirious as Mr. White presented. When they recover from their intoxication and altered mental status, most do not recall any of the events that had occurred while they were intoxicated, let alone the feelings or experiences that occurred during that time. There are no studies that support that Dr.

Spitz can opine as to what Mr. White was experiencing at the time of his encounter with law enforcement.

6. *I disagree with Dr. Spitz when he opines that, "Michael White had a mildly enlarged heart, indicating elevated blood pressure, which in my opinion played no role in this case."*

Mr. White had an enlarged heart as noted on autopsy. Common causes are chronic untreated hypertension, but also chronic cocaine or other drug use. Dr. Spitz's report did not reference any medical records, nor I did not see any medical records that noted chronic untreated hypertension, so I see no medical basis of how Dr. Spitz opines that the enlarged heart was due to hypertension as opposed to drug use. Either way, Mr. White had an enlarged heart and he died of a cardiac arrest. I disagree that the enlarged heart played no role in his cardiac arrest and death. A person with an enlarged heart is more likely to go into cardiac arrest and die compared with a person with a normal sized heart, all other aspects being equal. So I see no medical basis of how Dr. Spitz can opine that the enlarged heart "played no role."

7. *I disagree with Dr. Spitz when he opines referring to the enlarged heart that, "With medical treatment, this condition would not necessarily reduce his life expectancy currently estimated at 80 years based on the major life insurance companies' tables and the CDC."*

In a normal male that has hypertension as his only medical issue and is treated with medications to control the blood pressure, the risk factor for stroke, heart attack and sudden death of the hypertension goes away. Because of this, the insurance company actuarial tables will then not let the successfully treated hypertension "count" negatively when calculating life expectancy. However, Dr. Spitz opines that Mr. White has an enlarged heart due to his hypertension. The only way the heart enlarges due to hypertension is that the hypertension is untreated or under treated. This untreated hypertension then nullifies the life insurance expectancy tables for normal individuals

and cannot be used to determine Mr. White's life expectancy.

Besides the untreated hypertension acknowledged by Dr. Spitz, Mr. White also had an enlarged heart, which negatively impacts life expectancy as well. And finally, Mr. White uses cocaine, also known to shorten life expectancy. So for Dr. Spitz to opine a normal life expectancy for Mr. White estimated at 80 years and not reduced by any of these significant medical conditions is medically unreasonable.

Under penalty of perjury, I hereby swear that the opinions stated above are true and correct within a reasonable degree of medical probability.

Respectfully submitted,

*[signature]*

Gary M. Vilke, M.D., FACEP, FAAEM
Professor of Clinical Emergency Medicine
Director, Clinical Research for Emergency Medicine
University of California, San Diego Medical Center