CLAUDIA M. QUINTANA
City Attorney, SBN 178613
By: FRANK A. SPLENDORIO
Deputy City Attorney, SBN 272601
CITY OF VALLEJO, City Hall
555 Santa Clara Street, P.O. Box 3068
Vallejo, CA 94590
Telephone: (707) 648-4545  Fax: (707) 648-4687
Email: frank.splendorio@cityofvallejo.net

A. BYRNE CONLEY, ESQ. SBN 112715
SEAN C. CONLEY, ESQ. SBN 130814
GIBBONS & CONLEY
2185 North California Boulevard, Suite 285
Walnut Creek, CA 94596
Telephone: (925) 932-3600  Fax: (925) 932-1623

Attorneys for Defendants BARRY BOERSMA, HERMAN
ROBINSON, JOHN CUNNINGHAM, MIKE KOUTNIK,
RAUL MUNOZ, and ROBERT NICHELINI

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| V.W., a minor, by and through her Guardian Ad Litem, Tanaya Barber, Individually and as Successor in Interest of Decedent MICHAEL WHITE, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT NICHELINI, et al. <br><br> Defendants. | CASE NO. 2:12-cv-01629-MCE-AC <br><br> **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT** <br><br> Date:  May 19, 2016 <br> Time:  2:00 p.m. <br> Place:  Courtroom 7 |

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-MCE-AC

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................................... 1

II.   LEGAL ISSUES ................................................................................................ 4

    A.    Summary Judgment Should be Granted Based Upon the Automatic
        Stay of the Bankruptcy of the City of Vallejo ....................................... 4

    B.    All of the Officer Defendants are Entitled to Summary Judgment
        Against the Representative Plaintiff's (Estate's) Claims in the First
        Cause of Action (Under the Fourth Amendment) Based Upon
        Qualified Immunity ................................................................................. 8

        i.    The Seizure of Mr. White was Proper ................................................. 8

        ii.   Reasonable Force was Used to Seize Mr. White ................................ 10

            a.    Officer Koutnik is Entitled to Summary Judgment Based
                Upon Qualified Immunity ............................................................. 12

            b.    Officer Cunningham is Entitled to Summary Judgment Based
                Upon Qualified Immunity ............................................................. 12

            c.    Cpl. Boersma Should be Granted Summary Judgment  based
                upon Qualified Immunity .............................................................. 14

            d.    Summary Judgment Should be Granted for Officer Munoz
                Based Upon Qualified Immunity .................................................. 15

            e.    Sgt. Robinson Should be Granted Summary Judgment Based
                Upon Qualified Immunity ............................................................. 16

    C.    All of the Officer Defendants are Entitled to Summary Judgment
        Against the "Individual Capacity" Plaintiff Claims in the First
        Cause of Action, for the 14th Amendment Claim (Loss of Familial
        Association), Based Upon the Facts and Qualified Immunity .............. 16

    D.    Chief Nicholini Should be Granted Summary Judgment on the
        Second Cause of Action (*Monell* Claim) Based Upon Qualified
        Immunity and Absence of Evidence of Liability ................................... 18

    E.    All Defendants are Entitled to Summary Judgment on the Third
        Cause of Action, for Violation of Civil Code §52.1 ............................. 21

    F.    All Defendants are Entitled to Summary Judgment on the 4th Cause
        of Action for Negligence and 5th Cause of Action for Assault and
        Battery ................................................................................................... 21

i

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-
MCE-AC

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

G.   Defendants are Entitled to Summary Judgment on the Request for Declaratory and Injunctive Relief............................................................ 23

H.   Defendants are Entitled to Summary Judgment on the Claim for Punitive Damages ...................................................................................... 24

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-MCE-AC

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*Bias v. Moynihan*
(9th Cir. 2007) 508 F.3d 1212 ........................................................... 12

*Brigham City v. Stuart*
(2006) 547 US. 398......................................................................... 9

*Brown v. City and County of San Francisco*
(N.D. Cal. 2014) 2014 WL 1364931, at *17 .................................... 22

*Bryan v. MacPherson*
(9th Cir. 2010) 630 F.3d 805 ......................................................... 12, 13

*Celotex Corp. v. Catrett*
(1986) 477 U.S. 317, 323-324 ....................................................... 11

*Dang v. Cross*
(9th Cir. 2005) 422 F.3d 800 ......................................................... 24

*Demery v. Kupperman*
(9th Cir. 1984) 735 Fd.2d 1139, 1146-1149 .................................... 7

*DeoCampo v. Potts*
9th Cir. Case No. 14-16192 on appeal from E.D. Cal. Case No. 2:06-cv-
01283-wbs-cmk. ....................................................................... 8

*Drummond v. Anaheim*
(9th Cir. 2003) 343 F.3d 1052 ....................................................... 11

*Estate of Lopez ex rel. Lopez v. City of San Diego*
(S.D. Cal. 2014) 2014 WL 7330874, *12...................................... 22

*Flores v. City of Los Angeles*
(9th Cir. 2014) 758 F.3d 1154 ....................................................... 19

*Gonzales v. Anaheim*
(9th Cir. 2014) 747 F.3d 789 ......................................................... 17

*Hall v. City of Fremont*
(9th Cir. 2013) 520 F. App'x 609.................................................. 10

*Hanna ex rel. Henderson v. County of Fresno*
(E.D. Cal. 2014) 2014 WL 6685986............................................... 20

*Han v. Folsom*
(E.D. Cal. 2015) 2015 WL 1956521................................................ 22

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-
MCE-AC

*Hodgers-Durgin v. De La Vina*
    (9th Cir. 1999) 199 F.3d 1037 ................................................................... 24

*Lyall v. City of Los Angeles*
    (9th Cir. 2015) 807 F.3d 1178 ................................................................... 21

*Nelson v. County of Sacramento*
    (E.D. Cal. 2013) 926 F.Supp.2d 1159 ...................................................... 20

*O'Loghlin v. County of Orange*
    (9th Cir 2000) 229 F.3d 871. ................................................................. 5, 7

*Porter v. Osborne*
    (9th Cir. 2008) 546 F.3d 1131 ................................................................... 17

*Ramirez v. City of Buena Park*
    (9th Cir. 2009) 560 F.3d 1012 ..................................................................... 8

*Ryburn v. Huff*
    (2012) —— U.S. ——, 132 S.Ct. 987.......................................................... 11

*Sanders v. City of Fresno*
    (E.D.Cal. 2006) 2006 WL 1883394............................................................ 23

*Saman v. Robbins*
    (9th Cir. 1999) 173 F.3d 1150 ................................................................... 22

*Samson v. California*
    (2006) 126 S.Ct. 2193, 2202....................................................................... 8

*Smith v. Fontana*
    (9th Cir. 1987) 818 F.2d 1411 ................................................................... 16

*Smith -Downs v. City of Stockton*
    (E.D. Cal. 2012) 2012 WL 320 2265............................................................ 7

*Tatum v. San Francisco*
    (9th Cir. 2006) 441 F.3d 1090 ..................................................................... 9

*Terry v. Ohio*
    (1968) 392 U.S. 1, 23-27 .............................................................................. 9

*United States v. Butcher*
    (9th Cir. 1991) 926 F.2d 811 ....................................................................... 8

*United States v. Cervantes*
    (9th Cir. 2000) 219 F.3d 882 ....................................................................... 9

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

iv

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-
MCE-AC

*Velarde v. Union City Police Department*
(N.D. Cal. 2015) 2015 WL 6871579 *4 ........................................................ 13

*Wilkinson v. Torres*
(9th Cir. 2010) 610 F.3d 546 ...................................................................... 17

*Williams v. Kenney*
(E.D. Cal. 2008) 2008 WL 445 4042............................................................ 7

**<u>CALIFORNIA STATE CASES</u>**

*City of Simi Valley v. Superior Court*
(2003) 111 Cal.App.4th 1077 ...................................................................... 21

*Hayes v. San Diego*
(2013) 57 Cal.4th 622 ................................................................................. 22

*Lockyer v. City of San Francisco*
(2004) 33 Cal.4th 1055 ................................................................................ 5

*Munoz v. City of Union City*
(2004) 120 Cal.App.4th 1077 ...................................................................... 21

*Oppenheimer v. City of Los Angeles*
(1951) 104 Cal.App.2d 545 ........................................................................ 23

*De Villers v. San Diego*
(2007) 156 Cal.App.4th 283 ....................................................................... 23

**<u>CALIFORNIA AUTHORITIES AND STATUTES</u>**

Government Code §820.2 ............................................................................. 23

Government Code §825 .............................................................................. 5, 7

Government Code §825.2 .............................................................................. 7

Government Code §825(a)............................................................................. 6

Government Code §835 and §995 ............................................................. 5, 7

Government Code §996.4 .............................................................................. 7

Health & Safety Code §11350 .................................................................... 9

Penal Code §135 .......................................................................................... 9

Penal Code §148 .......................................................................................... 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-
MCE-AC

Penal Code §242 ........................................................................................................ 8, 9

Penal Code §368 ........................................................................................................ 8

Penal Code §602(o) .................................................................................................... 9

Penal Code §647(f) ..................................................................................................... 8

Penal Code §3067(b)(3)............................................................................................... 8

Welfare & Institutions Code §5150 ............................................................................ 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-
MCE-AC

**I.**
**INTRODUCTION**

This action involves an incident in which Defendant Police Officers of the City of Vallejo detained Decedent Michael White, who subsequently died. The action is brought by V.W., on her own behalf as the daughter of Michael White, and also as successor in interest to the estate of Michael White. The relevant facts are discussed in further detail below, as they apply to the individual Defendants. The following is provided as a general overview of the background of the claim.

On the afternoon of June 15, 2010, a dispatcher for the City of Vallejo broadcast a request for police assistance on San Marcus Drive in Vallejo California, advising that an elderly woman reported that she had been choked by her neighbor, who had returned to his unit nearby, and requested an ambulance, apparently for her assailant. Undisputed fact ("UF") 3, 4. The Dispatcher also reported that the medical providers were being dispatched, but would stage outside the scene. UF 4. All of the responding officers understood that this meant that they were to investigate the scene before allowing medical providers to respond, because of the reported assault. *Ibid*. Defendant Officers Cunningham, Munoz, Cpl. Boersma, and Sgt. Robinson responded to the scene of this incident were in full uniform. UF 2.

A third party witness told the first officers on the scene that the suspect was "crazy," high on drugs, and had attacked the woman at 395 San Marcus Drive. UF 5. The officers next spoke to the victim reporting party, Ms. Claros, who reported  that, as she was walking from her front gate into her house, Decedent Michael White ran up behind her, reached over her shoulder, and violently put his hands around her neck, choking her, and then threw her to the ground, then the suspect returned to 392 San Marcus Drive. UF 6. Ms. Claros reported that she did not know why White was attacking her, and believed Mr. White was crazy and on drugs. UF 7.

The officers then interviewed a woman seen in the doorway of 392 San Marcus Drive, the location where Mr. White had reportedly gone. UF 8. The woman, identified as Ms. Villasenor, reported that Mr. White was acting crazy and was possibly on drugs and had just assaulted her neighbor. UF 8. She reported that Michael was a temporary guest in her house and she wanted

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-MCE-AC

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

him removed. *Ibid.* She also reported that he was on parole. *Ibid.* She indicated that Mr. White had also just assaulted her as well. *Ibid.* Ms. Villasenor asked the officers to remove Mr. White from her house. *Ibid.*

Sgt. Robinson and Officer Cunningham entered Ms. Villasenor's residence and located Mr. White in the bathroom off of her bedroom. The officers asked White to come out of the bathroom to talk to them. UF 10, 11. The officers, all in full uniform, identified themselves as police officers. Mr. White refused to comply. UF 2, 11.

The officers were very concerned by the situation. They were in a confined, cluttered space, dealing with an irrational, possibly drugged individual, who had just attacked two people, was concealed behind a bathroom door, and would not come out or talk to them. UF 12. The officers all knew that bathrooms often contain objects that can be used as weapons. *Ibid.* In order to see what Mr. White was doing, Officers pushed the door open and saw Mr. White standing shirtless in the bathroom sweating. UF 13. White responded to further officer attempts to open the door by vigorously pushing against the door to keep the officers at bay. UF 13.

After one push on the door, Cpl. Boersma looked inside the bathroom and saw Mr. White holding up to his mouth a plastic bag containing what appeared to be illegal drugs. UF 14. Cpl. Boersma notified his fellow officer that Mr. White appeared to be attempting to put the baggy of drugs in his mouth to eat them. *Ibid.* Cpl. Boersma and Officer Cunningham told Mr. White to put the drugs down and come outside to talk. UF 15. Mr. White refused to comply. *Ibid.*

Mr. White and the officers continued to struggle to gain control of the door to open it. *Ibid.* The door was ultimately pulled off the door jam and Mr. White attempted to push it into the Officers. UF 16.

The officers became even more anxious as Mr. White was showing super human strength in fighting off the officers' attempt to get past the door, his continued concealment, his steadfast refusal to cooperate to follow orders to get on the ground, or even talk to them, as well as his obvious size and deranged demeanor (UF 17, 18) on top of his apparent intent to swallow drugs.

Officer Munoz attempted to apply his taser to Mr. White in dart mode. UF 19. He aimed

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-MCE-AC

at Mr. White's stomach. He activated the taser, and Mr. White tensed but did not stop wrestling for control of the door. *Ibid.* When the door was pulled away from Mr. White, White charged forward towards the threshold of the bathroom and Officer Munoz activated his taser again, but once more it had no apparent effect. *Ibid.* He attempted a third and fourth activation of his taser when Mr. White charged the officers again, but it had no apparent effect on Mr. White's resistance. *Ibid.*

Officer Cunningham deployed his taser to Mr. White in dart mode after Munoz's attempt failed to stop Mr. White. UF 20. When Officer Cunningham activated the taser Mr. White growled and gritted his teeth, but continued fighting and wrestling with the officers as soon as the taser application was completed. *Ibid.* Officer Cunningham believes he cycled his taser two more times, and Mr. White stopped fighting during the actual activation cycle, but continued struggling with the officers as soon as the taser application was stopped. *Ibid.*

Eventually, officers were able to get into the small, cluttered bathroom, where they tried to handcuff Mr. White. UF 21. Mr. White actively fought off the attempt to handcuff him, by elbowing and kicking the officers. UF 21. Officer Munoz struck Mr. White there times on his right side to get Mr. White to let Officer Munoz cuff his wrist. UF 22. After the third strike, Mr. White relaxed his right arm, but otherwise continued to resist being handcuffed and restrained. As the taser applications and distraction blows had failed to get Mr. White to submit to handcuffing, Cpl. Boersma attempted to apply a lateral neck restraint (also known as a carotid restraint) on Mr. White. UF 23. Cpl. Boersma encircled his arm around Mr. White's neck as Mr. White was in a seated position, but Mr. White dropped his chin to his chest, and resisted the attempt to place the carotid restraint. *Ibid.* Cpl. Boersma attempted the restraint for something under 30 seconds, while Mr. White continued to resist the Officer's control. UF 23, 24. Finally, Mr. White stopped resisting, but did not go completely limp. UF 24.

Finally the officers were able to place Mr. White in handcuffs. UF 24. As soon as Mr. White was secured in handcuffs, he was sat upright and the staging medical assistance was called to come onto the scene. UF 25. One officer saw that Mr. White's jaw was clenched and massaged

3

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-
MCE-AC

the jaw to maintain Mr. White's airway, while another went to retrieve a CPR mask. UF 25.

Medical personnel arrived and attempted to assess Mr. White. However, Mr. White continued yelling and screaming and rolling around, and kicked the officers and paramedics attempting to assess him. UF 26. The paramedics were forced to retreat as they could not help Mr. White. *Ibid.*

At around this time, Officer Koutnik came into the trailer and observed Mr. White screaming and kicking the officers and medical personnel who was tending to Mr. White. UF 27. Officer Koutnik, with the help of other officers, was able to gain control of Mr. White's legs sufficiently for another officer to place a hobble around Mr. White's legs to prevent Mr. White from assaulting anyone else. UF 27, 28.

The officers determined that, because of the close quarters, they could not place Mr. White on a gurney inside the house. UF 29. Therefore, Officers carried Mr. White out of the residence to place him on a gurney waiting outside the front door. *Ibid.*

There was no evidence of traumatic injury to Mr. White beyond the taser barbs embedded in Mr. White. UF 37. The coroner and the Defendants contend that Mr. White's death was caused by excited delirium syndrome, and Plaintiff's disclosed medical expert contends that Mr. White died of asphyxiation, and therefore the medical cause of Mr. White's death is a disputed fact.

## II.
## LEGAL ISSUES

Defendants ask that summary judgment be granted as to all Defendants based upon the effect of the bankruptcy of the City of Vallejo. Further, each Defendant asks that he be granted summary judgment based upon qualified immunity. In the alternative, Defendants ask that partial summary judgment be granted on the basis of the facts and arguments as set forth below.

### A. <u>Summary Judgment Should be Granted Based Upon the Automatic Stay of the Bankruptcy of the City of Vallejo</u>

The City of Vallejo filed for Chapter 9 bankruptcy protection. The City of Vallejo and its retired Chief Nicholini moved for judgment on the pleadings of the original Complaint in this action, and the Court granted that motion with respect to the City and to Chief Nicholini in his

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-MCE-AC

official capacity. See Order, docket document number 24, dated August 2, 2013[1].

In the Defendants' original motion, Defendant Nicholini asked the Court to dismiss the action against Nicholini in his personal capacity because the bankruptcy also acted as a discharge of the claim against Nicholini. This Court denied that motion for several reasons, some of which involved the fact that the case was at the pleadings stage. The Defendants, including Chief Nicholini and the other Defendants, who were not named in the original Complaint, now renew the request that this action be dismissed by virtue of the effect of the City's bankruptcy.

This Court has already determined that, because the subject incident arose on June 15, 2010, it comes within the period of claims subject to the City's bankruptcy action. *Ibid* at 5:1-5; and see Docket Document Numbers 13-1, 13-2 (City Bankruptcy filings). The remaining question is whether this litigation, nominally brought against these officers of the Police Department of the City of Vallejo, is also subject to the bar on claims because this litigation is, in reality, a claim against the assets of the City of Vallejo.

The claim against the officers in this case is subject to defense and indemnity by the City pursuant to state statute. Government Code §835 and §995. Because the City is obligated to defend and indemnify the Defendants, the claims against the officers constitute a "debt" subject to discharge in bankruptcy. In the Chapter 9 context, "debt" means any "liability on a claim," and includes claims in civil actions such as those raised in the present case. See *O'Loghlin v. County of Orange* (9th Cir 2000) 229 F.3d 871, 874. *Lockyer v. City of San Francisco* (2004) 33 Cal.4th 1055, 1098. ("[E]ven if the city officials were to be sued in their personal capacity … under Government Code section 825 the officials would be entitled to have their public employer provide a defense and pay any judgment entered in such an action, whether the action was based on a state law claim or a claim under the federal civil rights statutes.")

In ruling on the motion for judgment on the pleadings, this Court noted many potential factual issues precluding rendering such a judgment *at that time*. First, the pleadings did not specify whether Chief Nicholini had requested and been granted a defense by the City. See order, docket

---

[1] The bankruptcy filing, plan, and notice to Plaintiff, see Request for Judicial Notice, Docket No. 13-1.

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-MCE-AC

no. 24 at p. 10. The City has provided a requested defense to all of the named Defendants in the case. UF 38. The Court also indicated that it was not determined whether the Defendants were acting within the course and scope of their duties. Order, docket no 24, p. 1l. It is now established, as pled by Plaintiffs and admitted in the answer to the First Amended Complaint, that all of the Defendants were acting within the course and scope of their duties. UF 39.

The Court also stated that the defense could be withdrawn if the City determines that "an actual and specific conflict of interest" has arisen between the Defendant employees and the City. Order, docket no. 24, p. 12. Discovery has closed in this case, as specified in the Court Scheduling Order, and no such conflict has arisen. UF 40. The City made no reservation of rights under Government Code section 825(a). *Ibid.*

The Court also indicated that the course and scope of employment issue also arises with respect to indemnification. Order, docket no. 24, p. 13. Again, Plaintiffs have alleged and the Defendants have admitted, through counsel retained by the City on behalf of the Defendants, that the officers' actions were within the course and scope of their employment. The issue of course and scope of employment is no longer a triable issue in this case. UF 39.

Next the Court noted that the Defendants would be required to cooperate in good faith in defense of the claims in this action. Order, docket no. 24, p. 13. All of the Defendants have done so. UF 41.

The Court notes that the City of Vallejo will not necessarily be required to indemnify any award of punitive damages. Order, docket no. 24, p. 14. As discussed below, Plaintiff cannot succeed on a punitive damages claim, and summary judgment should be granted as to that request for relief. Furthermore, even if punitive damages were available against any of the Defendants in this case, that would not affect the indemnification obligation with respect to any other damages, and therefore the Court should dismiss all non-exemplary damages or should grant summary judgment as to all non-punitive damage or non-exemplary damage requests in this action.

The Court also held that the bankruptcy bar did not apply to claims directly against the individual employees based upon the fact that sovereign immunity under the 11th Amendment

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-MCE-AC

does not apply to "personal capacity" claims against individual government employees. Order, docket no. 24, p. 15-17. The Defendants are not claiming a total immunity from suit. Rather, any liability of the officers must be pursued as a claim in the bankruptcy estate because, by virtue of state law, all such claims are a "debt" of the City's bankruptcy estate.[2] Courts have recognized this obligation with regard to staying actions while the plan or reorganization is pending. See, e.g., *Williams v. Kenney* (E.D. California 2008) 2008 WL 445 4042; *Smith-Downs v. City of Stockton* (E.D. CA 2012) 2012 WL 320 2265. It is clear that the duty of defense and indemnity is a "debt" of the City regardless of whether it arises under state or federal law. See *Demery v. Kupperman* (9th Cir. 1984) 735 Fd.2d 1139, 1146-1149 (acknowledging that California law creates a duty of indemnification enforceable in state court, although that does not extend the state's sovereign immunity to employees).

Furthermore, there is no reason to believe that a bankruptcy discharge would not apply to a civil rights claim. See *O'Loghlin, supra,* 229 F.3d 871 (ADA claim).

The previous Order (Order, docket no. 24, p. 18), appears to be based upon a mistaken belief that the City's provision of defense and indemnity to its employees is effectively voluntary because, under certain unique circumstances, the defense and indemnity obligation could be withdrawn. This is contradicted by the statutory right to a defense, including an employee's right to seek writ review or pursue a cause of action for wrongful denial of the defense. Government Code §996.4. In fact, the City bears financial risk of the judgment against the Defendants by virtue of having assumed the defense. Government Code §825. In fact, the named Defendants would be entitled to reimbursement should they pay any portion of that judgment, under state law. Government Code §825.2. There is nothing voluntary about the City's obligations where these statutory conditions are met. None of the contingencies that would remove an obligation to defend or indemnity are present.

This precise issue is currently pending in an appeal before the United States Court of Appeals

---

[2] The statutory defense and indemnity obligations apply regardless of whether the claim is denominated "official" or "individual" capacity. See Gov't. Code §§825, 995.

7

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-MCE-AC

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

in *DeoCampo v. Potts* (9th Cir. Case No. 14-16192) on appeal from (E.D. Cal. Case No. 2:06-cv-01283-wbs-cmk.) That case is scheduled for oral argument on this same issue on May 10, 2016. Defendants ask this Court to consider any ruling issued in that case.

**B. All of the Officer Defendants are Entitled to Summary Judgment Against the Representative Plaintiff's (Estate's) Claims in the First Cause of Action (under the Fourth Amendment) Based Upon Qualified Immunity.**

**i. The Seizure of Mr. White was Proper.**

The defendant officers on scene at this incident are each entitled to summary judgment, under the facts and based upon qualified immunity, because a reasonable officer could believe that the officers' actions were lawful. *Ramirez v. City of Buena Park* (9th Cir. 2009) 560 F.3d 1012, 1020.

There is no question that the officers' seizure of Mr. White was proper. First, Mr. White was a parolee at the time of the incident. UF 9. Therefore, 4th Amendment probable cause requirements do not even apply to the search and seizure of Mr. White. "Under California and federal law, probable cause is not required to arrest a parolee for a violation of parole. Warrantless arrests of parole violators are also valid. [Citations]. The arrest of a parolee is more like 'a mere transfer of the subject from constructive custody into actual or physical custody.'" *United States v. Butcher* (9th Cir. 1991) 926 F.2d 811, 814; Penal Code §3067(b)(3). The officers did not even need "suspicion" to search and seize Mr. White. "Thus, we conclude that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." *Samson v. California* (2006) 126 S.Ct. 2193, 2202.

Indeed, even if Mr. White had not been on parole, the officers' seizure of Mr. White would be proper. The officers were informed that Mr. White had committed a battery by trying to choke Ms. Claros. UF 6; Penal Code §242 and potentially elder abuse under Penal Code §368. This battery was confirmed by two other witnesses. UF 5, 8. Several witnesses also reported that Mr. White appeared to be extremely intoxicated on drugs and violent in public. Penal Code §647(f). UF 5-8. Mr. White also committed a battery against Ms. Villasenor. UF 8. Further, the officers were told that Mr. White was refusing to leave Ms. Villasenor's house, potentially a trespass.

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-MCE-AC

Penal Code §602(o). At that point, they tried to talk to Mr. White and asked him to give his version of events. UF 11. Trying to talk to him would amount to no more than a *Terry* stop requiring only reasonable suspicion to believe that Mr. White had committed a crime. *Terry v. Ohio* (1968) 392 U.S. 1, 23-27.

Mr. White refused to comply with lawful orders that he come out of the bathroom and talk to the officers. UF 11. Penal Code §148. He actively resisted the officers attempt to open the door so that the officers could determine whether he was armed. UF 13. An officer then saw Mr. White put what appeared to be a plastic baggie containing illegal drugs into his mouth, amounting to destruction of evidence and illegal posession of narcotics. UF 14. Penal Code §135; Health Safety Code §11350. Once inside, Mr. White then attacked the officers and, later, the paramedics tried to help him. Penal Code §242.

The officers had probable cause to arrest Mr. White if there is a "fair probability" that Mr. White committed a crime. *Tatum v. San Francisco* (9th Cir. 2006) 441 F.3d 1090, 1094. That probable cause existed before the officers ever entered Ms. Villasenor's house, based upon the reports of Mr. White's battery on Ms. Claros and Ms. Villasenor and public intoxication. Furthermore, his apparent attempt to eat drugs created a medical emergency allowing for seizure of Mr. White irrespective of probable cause. *United States v. Cervantes* (9th Cir.2000) 219 F.3d 882, 887-89, abrogated on other grounds, *Brigham City v. Stuart* (2006) 547 US. 398.

Beyond these many Penal Code violations, the officers were entitled to seize Mr. White because of his bizarre and violent behavior, both as reported and as observed by the officers. Welfare and Institutions Code § 5150.

> "Probable cause exists under [California Welfare & Institutions Code §]5150 if facts are known to the officer 'that would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself or herself.' " *Bias v. Moynihan,* 508 F.3d 1212, 1220 (9th Cir.2007) (quoting *People v. Triplett,* 144 Cal.App.3d 283, 288, 192 Cal.Rptr. 537 (1983)). "To justify the detention, the officer must point to 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant his or her belief or suspicion.' " *Id.* (quoting *Triplett,* 144 Cal.App.3d at 288, 192 Cal.Rptr. 537). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-
MCE-AC

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

Moreover, "[a] peace officer ... is not required to make a medical diagnosis of mental disorder." *Triplett,* 144 Cal.App.3d at 288, 192 Cal.Rptr. 537. "It is sufficient if the officer, as a lay person, can articulate behavioral symptoms of mental disorder, either temporary or prolonged." *Id.* "An all-encompassing lay definition of mental disorder is difficult if not impossible to formulate." *Id.* "But, generally, mental disorder might be exhibited if a person's thought processes as evidenced by words or actions or emotional affect, are bizarre or inappropriate under the circumstances." id

*Hall v. City of Fremont* (9th Cir. 2013) 520 F. App'x 609, 612-613.

### ii. Reasonable Force was Used to Seize Mr. White

Plaintiff's central assertion is that the officers used unreasonable force in effecting Mr. White's seizure. The standard for this use of force is summarized in the Ninth Circuit Model Jury Instruction 9.22:

Under the Fourth Amendment, a police officer may only use such force as is "objectively reasonable" under all of the circumstances. In other words, you must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight.

In determining whether the officer[s] used excessive force in this case, consider all of the circumstances known to the officer[s] on the scene, including:

1.   The severity of the crime or other circumstances to which the officer[s] [was] [were] responding;
2.   Whether the plaintiff posed an immediate threat to the safety of the officer[s] or to others;
3.   Whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight;
4.   The amount of time and any changing circumstances during which the officer had to determine the type and amount of force that appeared to be necessary;
5.   The type and amount of force used.

Although not articulated in the Complaint, Plaintiff apparently argues that Mr. White's self-induced cocaine psychosis affects the standard by which the officers' actions are measured.

The problems posed by, and thus the tactics to be employed against, an unarmed emotionally distraught individual who is creating a disturbance or resisting arrest are ordinarily different from those involved in law enforcement efforts to subdue

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-
MCE-AC

an armed and dangerous criminal who has recently committed a serious offense. In the former instance, increasing the use of force may, in some circumstances at least, exacerbate the situation; in the latter, a heightened use of less-than-lethal force will usually be helpful in bringing a dangerous situation to a swift end.

*Drummond v. Anaheim* (9th Cir. 2003) 343 F.3d 1052, 1048. But such considerations do not weigh against the use of force here because Mr. White did just commit serious and violent batteries, was trespassing, and was apparently trying to eat drugs, refused all verbal commands, hid from officers' view, and violently resisted all officers' attempts to observe and restrain him.

The constitutional standard for using force less than deadly force is lower. *See Gregory v. County of Maui,* 523 F.3d 1103, 1106–07 (9th Cir.2008) (holding that "officers had substantial grounds for believing that some degree of force was necessary" where suspect was possibly under the influence of drugs, acting bizarrely, trespassing, and refusing repeated commands to drop a pen). Because it is undisputed that [decedent] did not respond to the officers' directions before any force was applied, appeared to be trying to swallow potential evidence, and began driving away, the defendants were entitled to summary judgment on the uses of force leading up to the gunshot, such as striking [decedent] with a flashlight or hitting him in the head as he shifted the minivan into gear.

*Gonzalez v. City of Anaheim* (9th Cir. 2014) 747 F.3d 789, 797 fn. 3.

The force used varied from officer to officer, and is therefore evaluated individually for each officer. Since plaintiff bears the burden to prove that the force used was unreasonable, moving parties may look to plaintiff's absence of supporting evidence in plaintiff's discovery responses to establish that plaintiff cannot prove her case. "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 323-324.

With respect to evaluating a police officer's entitlement to qualified immunity, the Supreme Court has warned the courts to "be cautious about second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation." *Ryburn v. Huff* (2012) —— U.S. ——, 132 S.Ct. 987, 991-992.

In determining whether [an officer] is entitled to qualified immunity, we must ask two questions: " '(1) Was the law governing the officer's conduct clearly

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-MCE-AC

established? (2) Under that law, *could a reasonable officer* believe that the conduct was lawful?' " *Case v. Kitsap County Sheriff's Dep't,* 249 F.3d 921, 926 (9th Cir.2001) (quoting *Mena,* 226 F.3d at 1036) (emphasis added); *see also Anderson v. Creighton,* 483 U.S. 635, 636–37, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (holding that a "law enforcement officer who participates in [conduct] that violates the Fourth Amendment may [not] be held personally liable ... if a reasonable officer could have believed that the [conduct] comported with the Fourth Amendment"); *Kennedy v. City of Ridgefield,* 439 F.3d 1055, 1061 (9th Cir.2006) (explaining that "it may be difficult for a police officer to determine how to apply the relevant legal doctrine to the particular circumstances he or she faces ... if an officer makes a mistake in applying the relevant legal doctrine, he or she is not precluded from claiming qualified immunity so long as the mistake is reasonable").

*Bias v. Moynihan* (9th Cir. 2007) 508 F.3d 1212, 1220

### a.  Officer Koutnik is Entitled to Summary Judgment Based Upon Qualified Immunity

By the time Officer Koutnik arrived, Mr. White was already handcuffed and on the ground in the bedroom. UF 27. Officer's Koutnik's only application of force in this instance was holding Mr. White's leg while another officered attached a hobble to Mr. White's legs to prevent him from assaulting the officers and medical help attempting to treat Mr. White. Plaintiff's medical expert acknowledges that the application of the hobble did not cause Mr. White's death. UF 32.

In this case, Mr. White was violently resisting the attempt by medical personnel to assess his wellbeing, and was observed kicking both medical personnel and an officer. UF 27. Therefore, summary judgment should be granted based upon the undisputed facts as presented. Further, Officer Koutnik would be entitled to qualified immunity as a reasonable officer could believe that the use of force, holding Mr. White's leg to prevent him from kicking people, was appropriate.

### b.  Officer Cunningham is Entitled to Summary Judgment based upon Qualified Immunity

Officer Cunningham attempted to use a taser on Plaintiff. At the time that Officer Cunningham applied his taser, the Court of Appeals had not yet issued its determination that the use of a taser was an "intermediate" use of force, and that the law was not previously well settled that a taser could not be used on someone passively resisting officers. *Bryan v. MacPherson* (9th

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-
MCE-AC

Cir. 2010) 630 F.3d 805. The Court has held that, prior to the *Bryan* decision, an officer would be entitled to qualified immunity for use of a taser against even an unthreatening and unarmed suspect stopped for a minor infraction (driving without a seatbelt) who did not verbally threaten or confront the officer, was not trying to flee, was 20 ft. away from the officer and was not even facing the officer when the taser was applied. See *Velarde v. Union City Police Department* (N.D. Cal. 2015) 2015 WL 6871579 at *4.

Here, Plaintiff has asserted (without supporting evidence) that Mr. White was completely passive and peaceable. However, under the law as it stood before the *Bryan* decision, Officer Cunningham would be entitled to qualified immunity even assuming such unsupported facts.

Even under the standard created after the *Bryan* decision, Officer Cunningham would still be entitled to qualified immunity based upon the circumstances of this case. In the present case, Plaintiff, a parolee, had just committed two batteries, was apparently in a drug induced psychosis, was trespassing on Ms. Villasenor's property, attempted to ingest drugs, and refused to comply with orders from the police. Further, since Mr. White was on parole, he was subject to search and seizure by the officers at any time, and had an obligation to comply with their lawful orders. Instead, he violently fought with them, including striking and kicking them.

At no time did Mr. White cooperate in any request or order by the police. UF 31. Instead of complying with the requests and then orders to come out of the bathroom, Mr. White actively resisted by pushing at the door. UF 13, 15, 16, and 18. Indeed, he continued to wrestle with the officers for control of the door until the door came off its hinges. He actively fought with the officers while appearing to be in an agitated condition with abnormally great strength. UF 18. This contrasts tremendously with the situation in the *Bryan* case in which the Plaintiff was genuinely passive and compliant. Mr. White was a violent felon in a drug induced rage vigorously preventing officers from seeing what he was doing, concealed behind the bathroom door and refusing to talk to them.

Officer Cunningham also applied the hobble to Mr. White's legs, to keep him from kicking officers and the medics. UF 28. Again, this was per se reasonable under the circumstances.

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-
MCE-AC

Officer Cunningham should be granted summary judgment.

### c.  Cpl. Boersma Should be Granted Summary Judgment Based Upon Qualified Immunity

Cpl. Boersma is entitled to Qualified Immunity. Cpl. Boersma's only use of force in this case was the attempted carotid restraint on Mr. White. UF 23, 24. It is first important to note that a carotid restraint is an attempt to place the arm and forearm on the sides of the neck in order to restrict flow from the carotid arteries and is not a "choke hold." UF 23. The choke hold, by distinction, is placed across the throat, and is an attempt to prevent air from entering the body. *Ibid*. There is no evidence that a choke hold was applied in this case, and the only use of force at issue here is Cpl. Boersma's attempted use of a carotid hold, which may or may not have had some effect. UF 24.

The level of use of force involved in a carotid restraint has not been determined. For purposes of qualified immunity analysis, the courts generally look to the *Graham* factors, including severity of the crime at issue, whether the suspect poses an immediate threat, and whether the suspect is actively resisting or attempting to evade.

In the present case, Mr. White had just violently assaulted his neighbor by attempting to strangle her. UF 6. This is a severe, violent crime. He had also attacked the woman who was letting him stay at her house. UF 8. He was on parole and was refusing to comply with his obligation to allow the officers to seize him. UF 9. In addition, he was reported to be highly intoxicated and violent. UF 5-8. Furthermore, he had not only actively resisted the officers' attempts to gain access to him through the door, and forcibly fought against the officers' gaining entry into the bathroom with superhuman strength, but he also then used the door against the officers. UF 13, 18. Thus, he had also committed the crime of obstruction by refusing to cooperate with the police officers' lawful orders. Finally, an officer saw Mr. White placing what appeared to be a baggie of drugs in his mouth, which would constitute attempted destruction of evidence (in addition to causing great personal risk to Mr. White).

Attempts to control Mr. White by use of tasers had failed. UF 19, 20. Mr White was

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-MCE-AC

fighting violently against being handcuffed, displaying superhuman strength. UF 18, 21. The officers knew from training that bathrooms frequently contain many objects which can be used as a weapon. UF 12. By the time the carotid restraint was attempted, many other attempts to control Mr. White, including verbal, hands on and taser, had failed. Cpl. Boersma recognized an immediate and urgent need to get Mr. White under control. Mr. White's continued and violent resistance, including punching and kicking at officers, was actively interfering with their ability to procure that medical care.

Under all of these circumstances, a reasonable officer could believe that the application of a carotid restraint was reasonable. Therefore, summary judgment should be granted for Cpl. Boersma.

### d. Summary Judgment Should be Granted for Officer Munoz Based upon Qualified Immunity

Officer Munoz attempted to apply his taser to Mr. White. UF 19. As discussed above, for Officer Cunningham, this was reasonable under the circumstances and subject to qualified immunity.

Officer Munoz also applied the three strikes to Mr. White's side while Mr. White actively resisted being handcuffed. UF 22. Mr. White had not only, by this time, resisted the applications of the tasers, but was continuing to violently fight with the officers, punching and elbowing at them as well as resisting all attempts to control his arms to be handcuffed. Under the *Graham* factors, as discussed above, the relatively modest use of force involved in the distraction blows to induce Mr. White to allow himself to be handcuffed was clearly justified. There is no evidence that these distraction blows caused any localized injury to Mr. White. UF 37. They were reasonable under the *Graham* standard.

Finally, Officer Munoz put a knee to Mr. White's back to keep him in place so that Mr. White could be hobbled. UF 28. By the time the hobble was applied, the Officers had invited medical providers into the house to begin providing medical care for Mr. White. Mr. White, in handcuffs, responded by violently kicking the officers and medical providers who were trying to

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-MCE-AC

help him. UF 26, 27. Mr. White continued to flail around and kick, preventing him from obtaining the medical care the officers were attempting to provide, as well as committing additional assaults and batteries. The application of the force was brief, and only in an amount necessary to try to keep Mr. White in place long enough to put the hobble restraints on so that medical care could be provided. UF 28. Indeed, the application of the hobble restraints was not an attempt to seize Mr. White, who was already handcuffed on the scene. The hobble restraints were applied in order to allow paramedics to tend to him. *Ibid.* Since there was an immediate need to get medical attention to Mr. White, who was obviously high on drugs, may have swallowed drugs during the confrontation, and had been subjected to tasers, it was an urgent matter to try to get medical care for Mr. White, while Mr. White was actively resisting that attempt.

### e. Sgt. Robinson Should be Granted Summary Judgment Based Upon Qualified Immunity

Sgt. Robinson applied no force to Mr. White.

In answers to written interrogatories, Plaintiff was asked to identify all facts supporting the claim that Sgt. Robinson was liable to Plaintiff. Plaintiff responded by indicating that Officer Robinson violated the rights of Mr. White by using unreasonable force in restraining and tasering him. UF 33. As there is no evidence that Sgt. Robinson applied any force, nor did he use a taser, Plaintiffs have no evidence to support their claim against Sgt. Robinson.

Therefore, summary judgment should be granted to Sgt. Robinson based upon the facts and qualified immunity.

### C. All of the Officer Defendants are Entitled to Summary Judgment against the "Individual Capacity" Plaintiff Claims in the First Cause of Action, For the 14th Amendment Claim (Loss of Familial Association), Based Upon the Facts and Qualified Immunity

Plaintiff is suing in a "representative capacity" on behalf of the estate of Decedent Michael White, which is a Fourth Amendment claim, and also on her own behalf ("individual capacity") for loss of familial relationship, which is a 14th Amendment claim. *Smith v. Fontana* (9th Cir. 1987) 818 F.2d 1411, 1419. Under this 14th Amendment standard, official conduct must "shock

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-
MCE-AC

the conscience" in depriving a child of an interest in her relationship with a parent. *Porter v. Osborn* (9th Cir. 2008) 546 F.3d 1131, 1137. The evaluation of whether an act shocks the conscience depends upon whether the act involves a situation where actual deliberation is practical. *Wilkinson v. Torres* (9th Cir. 2010) 610 F.3d 546, 554. Where an officer is required to make "a snap judgment because of an escalating situation," the officer's conduct may only be found to shock the conscience if the officer acts with a purpose to harm unrelated to legitimate law enforcement objectives. *Ibid*. For example, actual deliberation was not practical where an officer faced an evolving state of circumstances over a five minute period, necessitating "fast action" and "repeated split second decisions." *Porter*, *supra,* 546 F.3d 1139.

For purposes of a summary judgment motion, the 14th Amendment standard effectively requires Plaintiff to produce "evidence that the officers had … ulterior motives for using force against [the Decedent]." *Gonzales v. Anaheim* (9th Cir. 2014) 747 F.3d 789, 797-798.

In the present case, there is no evidence of any ulterior motive. None of the officers on scene recognized Mr. White at the time of the confrontation. UF 30. In fact, Plaintiff's argument seems to consist of the argument that the officers should have exercised their judgment differently in approaching the scene of a combined criminal action and medical assistance request. But the officers knew that medical assistance was being staged until they controlled the scene, they knew that Mr. White could not be medically treated until restrained, they called in medical assistance as soon as they were able to overcome Mr. White's resistance and restrain him, and even at that point Mr. White fought off medical assistance until he was further restrained. There is no evidence to suggest any ulterior motive and, on that basis, all of the Defendant officers should be granted summary judgment on the 14th Amendment claim, including on the basis of qualified immunity.

In addition, Plaintiff cannot prove causation on the 14th Amendment claim for most of the

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-MCE-AC

Defendants. The loss of familial relationship claim is necessarily based upon Mr. White's death, since it is founded upon a loss of familial relations. According to Plaintiff's medical causation expert, Mr. White died of asphyxia because of the carotid restraint (Cpl. Boersma), the distraction blows to effect handcuffing (Officer Munoz), and the knee on the back to place the hobble (Officer Munoz). According to Plaintiff's expert, these were the only three actions by the officers that caused Mr. White's death. UF 32. Therefore, based upon Plaintiff's expert's opinions on medical causation, only Cpl. Boersma and Officer Munoz caused Mr. White's death. Therefore, Sgt. Robinson, Officer Cunningham, and Officer Koutnik, as well as Chief Nicholini, are entitled to summary judgment on all 14th Amendment claims, as none of them were the cause of Mr. White's death. With respect to Chief Nicholini, the only alleged training deficiency was related to tasers, which were not the cause of death. *Ibid*.

### D. Chief Nicholini Should be Granted Summary Judgment on the Second Cause of Action (*Monell* Claim) Based Upon Qualified Immunity and Absence of Evidence of Liability

Plaintiff's discovery response asserts that Chief Nicholini violated Plaintiff's rights through inadequate training of officers with respect to the use of tasers. UF 34. Therefore, the claim against Nicholini rests upon plaintiff proving a *Monell* "training" claim with respect to the taser use.

> [A]s to a municipality, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris,* 489 U.S. at 388, 109 S.Ct. 1197. This means that [plaintiff] "must demonstrate a 'conscious' or 'deliberate' choice on the part of a municipality in order to prevail on a failure to train claim." *Price,* 513 F.3d at 973. As to an official in his individual capacity, the same standard applies—[plaintiff] must show that [the official] was deliberately indifferent to the need to train subordinates, and the lack of training actually caused the constitutional harm or deprivation of rights. *Connick v. Thompson,* —— U.S. ——, 131 S.Ct. 1350, 1358, 179 L.Ed.2d 417 (2011).

Under this standard, [plaintiff] must allege facts to show that the [City and

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-MCE-AC

supervisory official] "disregarded the known or obvious consequence that a particular omission in their training program would cause [municipal] employees to violate citizens' constitutional rights." *Id.* at 1360 (internal quotation marks omitted).

*Flores v. City. of Los Angeles* (9th Cir. 2014) 758 F.3d 1154, 1158-59.

Robert Nicholini was not on scene during the subject incident. UF 1. According to Plaintiff's interrogatory responses, "based on information and belief," Defendant Nicholini was, at some unspecified time, the former Chief of the Vallejo Police Department. UF 34. The interrogatory further claims that Chief Nicholini was on notice that "prolonged or continuous exposure to the taser devices electrical discharge has been proven to cause severe injury and death as it relates to excited delirium." *Ibid*. Other than this speculation on the part of Plaintiff, Plaintiff provides no evidence that Chief Nicholini actually possessed such purported knowledge. Plaintiffs chose not to depose Chief Nicholini. Plaintiffs also assert that Taser International, the manufacturer of taser devices, issued a warning in 2006, but does not offer any evidence that Chief Nicholini ever reviewed or was aware of this purported bulletin. Therefore, even if such bulletin existed, and even if it contained the statement that Plaintiff claims, it would not establish anything concerning Chief Nicholini's knowledge at any particular time.

Plaintiffs also assert that Chief Nicholini violated the "training and standards for proper and safe straits [*sic*] of a person and in using the taser repeatedly by his officers." UF 34. What Plaintiffs have failed to assert, in addition to a lack of personal knowledge, is any particular connection between Chief Nicholini and any particular training of any involved officer in this case. In particular, Plaintiffs' own police practices expert admitted that all of the Defendant officers on scene had all required POST training according to their personnel records. UF 35. Thus, Plaintiff not only offers no evidence of Chief Nicholini's particular involvement with training on tasers in general, Plaintiff offers no evidence of what specific training was offered to the officers on scene or the officers who actually applied the tasers in this case.

It is not enough for plaintiff to assert that there is some abstract higher standard of training, according to their retained consultant, in order to establish that Nicholini had "deliberate indifference" for purposes of a *Monell* training claim.

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-
MCE-AC

In general, "[a] 'pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train,' though there exists a 'narrow range of circumstances [in which] a pattern of similar violations might not be necessary to show deliberate indifference.' " *Id.* (quoting *Connick,* 131 S.Ct. at 1360–61). In this "narrow range of circumstances," a single incident may suffice to establish deliberate indifference where the violation of constitutional rights is a "highly predictable consequence" of a failure to train because that failure to train is "so patently obvious." *Connick,* 131 S.Ct. at 1361 (discussing *City of Canton, OH v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). "These 'circumstances' generally involve incidents arising from a total lack of training, not simply an assertion that a municipal employee was not trained about 'the specific scenario related to the violation.' " *Williams v. Cnty. of Alameda,* ⸺ F.Supp.2d ⸺, 2014 WL 556008, at *11 (N.D.Cal. Feb.10, 2014) (quoting *Connick,* 131 S.Ct. at 1363); *see Dillman v. Tuolumne Cnty.,* No. 1:13–cv–404–LJO–SKO, 2013 WL 3832736, at *7 (E.D.Cal. July 23, 2013) (dismissing complaint for failure "to allege a *complete* lack of training with reference to [the contested municipal policies]"); *Dillman v. Tuolumne Cnty.,* No. 1:13–cv–404–LJO–SKO, 2013 WL 1907379, at *17 (E.D.Cal. May 7, 2013) (dismissing complaint for failure to allege "that employees received *no* training on [the contested municipal policy]").

*Hanna ex rel. Henderson v. County of Fresno* (E.D. Cal. 2014) 2014 WL 6685986, at *12-13. Here, plaintiff offered no evidence, in discovery responses, concerning actual training, patterns of "similar constitutional violations," or even a single prior incident suggesting deliberate indifference on the part of Nicholini.

[D]eliberate indifference is a "stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson,* ⸺ U.S. ⸺, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (internal citations and quotations omitted). "A pattern of *similar constitutional violations* by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 1360 (internal quotations omitted) (emphasis added).

*Nelson v. County of Sacramento* (E.D. Cal. 2013) 926 F.Supp.2d 1159, 1169. Plaintiff offers no proof of any "patterns" of behavior.

Finally, nothing in Plaintiff's evidence suggests how any particular deficiency actually caused injury in the present case. As discussed above, the use of the tasers under the prevailing law was clearly appropriate at the time. Indeed, it is appropriate under current law. Furthermore, Plaintiff's own medical expert indicated that, in his opinion, the cause of Mr. White's death was

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

1   the carotid restraint, strikes to the body, and knee applied to the back during hobbling. UF 32.

2   Plaintiff's own expert witness does not identify the tasers as causing Mr. White's death, and

3   Defendants' expert concurs in the opinion that the tasers did not cause Mr. White's death.

### E. All Defendants are Entitled to Summary Judgment on the Third Cause of Action, for Violation of Civil Code §52.1

6   Plaintiff's third cause of action asserts a claim against all defendants based upon

7   California Civil Code section 52.1. Essentially, plaintiff asserts that the defendants used

8   "coercion" (force) to violate the right to be free from an unreasonable seizure (force). See

9   complaint, paragraph 51. Such a claim is legally invalid. "[A] plaintiff in a search-and-seizure

10  case must allege threats or coercion beyond the coercion inherent in a detention or search in order

11  to recover under the Bane Act." *Lyall v. City of Los Angeles* (9th Cir. 2015) 807 F.3d 1178, 1196.

12  

13  Beyond the fact that the claim is legally insufficient, and as noted above, many of the defendants

14  applied no force whatsoever to Mr. White, and therefore could not be found liable under the Bane

15  Act.

### F. All Defendants are Entitled to Summary Judgment on the 4th Cause of Action for Negligence and 5th Cause of Action for Assault and Battery

18  Plaintiff asserts general duties of care involving the use of force in controlling Mr. White.

19  Complaint ¶56. "Federal civil rights claims of excessive force are the federal counterpart to state

20  battery and wrongful death claims; in both, the Plaintiff must prove the unreasonableness of the

21  officer's conduct." *Munoz v. City of Union* City (2004) 120 Cal.App.4th 1077, 1002 fn.6. Where

22  "a federal court factually finds that the police officers' conduct was objectively reasonable and

23  grants summary judgment, [that decision] bars a state negligence action premised upon violation

24  of the same primary right." *See City of Simi Valley v. Superior* Court (2003) 111 Cal.App.4th

25  1077, 1084, (discussing *res judicata* and primary rights). As discussed above, since each officers

26  acts were objectively reasonable, they are entitled to summary judgment on the negligence claim.

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-
MCE-AC

Plaintiff may also be asserting a claim beyond the use of force, based on "approach liability" theory. See *Hayes v. San Diego* (2013) 57 C.4th 622. This theory is subject to the "reasonable officer on the scene" standard. See *Han v. Folsom* (E.D. Cal. 2015) 2015 WL 1956521 *4. Here, plaintiff's own expert agrees that the officers' approach to the scene, staging medical providers and talking to witnesses then talking to decedent to persuade him to surrender, were reasonable. UF 36. The remainder of the officers' actions are reasonable as set forth in the 4th Amendment discussion above.

> In order to prove facts sufficient to support a finding of negligence, a plaintiff must show that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. Cnty. of San Diego,* 57 Cal.4th 622, 629, 305 P.3d 252, 255 (2013) (alterations omitted). "[P]eace officers have a duty to act reasonably when using deadly force." *Id.* "[S]tate negligence law, which considers the totality of the circumstances surrounding any use of deadly force, is broader than federal Fourth Amendment law, which tends to focus more narrowly on the moment when deadly force is used." *Id.* at 639. Nonetheless, "[a]s long as an officer's conduct falls within the range of conduct that is reasonable under the circumstances, there is no requirement that he or she choose the 'most reasonable' action or the conduct that is the least likely to cause harm and at the same time the most likely to result in the successful apprehension of a violent suspect, in order to avoid liability for negligence." *Brown v. Ransweiler,* 171 Cal.App. 4th 516, 537–538 (2009); *Hayes,* 57 Cal.4th at 632.

> To prevail on a claim for battery against the deputies, Plaintiffs must establish that the deputies used excessive force. *See Ayala,* 2007 WL 200236, at *13. California uses the Fourth Amendment standard of reasonableness. *See id.* (citing *Saman v. Robbins,* 173 F.3d 1150, 1157 n.6 (9th Cir. 1999).

*Brown v. City and County of San Francisco* (N.D. Cal. 2014) 2014 WL 1364931, at *17

"Under California law, a plaintiff bringing a battery claim against a law enforcement official has the burden of proving the officer used unreasonable force. See *Saman v. Robbins*, 173 F.3d 1150, 1157 n. 6 (9th Cir.1999) ("A prima facie case for battery is not established under California law unless the plaintiff proves that an officer used unreasonable force against him to make a lawful arrest or detention.")." *Estate of Lopez ex rel. Lopez v. City of San Diego* (S.D. Cal., 2014) 2014 WL 7330874, at *12.

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-MCE-AC

Plaintiff asserts a duty of care with respect to Defendant Nicholini which amounts to a general claim of duty "to properly and adequately hire, investigate, train, supervise, monitor, evaluate, and discipline" employees, including enforcing policies for police procedures. Complaint ¶57. Under California law, there is no tort duty for a public employor to properly hire, train, or supervise another public employee in the course and scope of their public duties. *De Villers v. San Diego* (2007) 156 Cal.App.4th 238, 252.

With respect to Chief Nicholini, "A chief of police is not liable in damages for the unlawful acts and omissions of the subordinates of the department unless he has directed such acts or personally cooperated" in the acts. *Oppenheimer v. City of Los Angeles* (1951) 104 Cal.App.2d 545, 549; 42A Cal.Jur.3d *Law Enforcement* § 171 ("Generally, a peace officer is not responsible for the acts or omissions of subordinates properly employed under him or her…"). As shown above, there is no evidence in the record that Nicholini either "directed" or "personally cooperated" in the acts alleged by Plaintiff. See *Sanders v. City of Fresno* (E.D.Cal. 2006) 2006 WL 1883394, at *11 (dismissing claim against defendant police chief for "negligent selection, training, retention, supervision, and discipline" because plaintiff failed to identify statute that imposed such duty).

Furthermore, a chief of police has discretionary immunity in rendering policy decisions about how to hire, train and supervise employees. Gov't Code § 820.2.

## G. Defendants are Entitled to Summary Judgment on the Request for Declaratory and Injunctive Relief

Plaintiff's request for relief, on page 16-17 of the First Amended Complaint, seeks declaratory and injunctive relief that primarily focused upon requiring "Defendants and their police officers" to enact certain policies or procedures. As a preliminary matter, the employer in this case, the City of Vallejo, is not a party to this action. Therefore, the requested declaratory and injunctive relief could not be obtained through this Complaint. Furthermore, Chief Nicholini retired from the department years ago. UF 1. Therefore, Plaintiff has failed to demonstrate that

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-MCE-AC

there is any policy maker currently a defendant in the present action by which they could obtain the claimed declaratory or injunctive relief.

Furthermore, Plaintiff has no standing to seek declaratory or injunctive relief based upon the asserted single incident of alleged violation of civil rights at issue in the present case. *Hodgers-Durgin v. De La Vina* (9th Cir. 1999) 199 F.3d 1037.

**H.  Defendants are Entitled to Summary Judgment on the Claim for Punitive Damages**

Punitive damages may only be awarded where "the defendant's conduct that harmed the plaintiff was malicious, oppressive, or in reckless disregard of the plaintiff's rights." *Dang v. Cross* (9th Cir. 2005) 422 F.3d 800, 809.

As discussed above with respect to the 14th Amendment claim, there is no evidence whatsoever of ill will, spite, or purpose of injuring Mr. White or his daughter. None of the Officers on scene recognized Mr. White from any previous encounters. UF 30. The facts clearly demonstrate that the officers had a reasonable basis for believing that Mr. White needed to be restrained immediately, and the officers provided Mr. White with medical care as soon as possible. In fact, that medical care was brought in perhaps prematurely, as Mr. White was still violently resisting even as the medical providers attempted to help him. On that basis, the request for punitive damages should be dismissed against all of the Defendant officers.

///

///

///

///

///

///

///

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-MCE-AC

1    With respect to the Chief, again there is no evidence whatsoever of any bad intention on the

2    part of the Chief. In fact, there is no evidence of any relationship between anything Chief

3    Nicholini may have done and the events of this incident. There is simply no evidence by which a

4    jury could reasonably conclude that Chief Nicholini was acting maliciously, oppressively, or with

5    reckless disregard of Mr. White's rights.

6

7                                        Respectfully submitted,

8                                        GIBBONS & CONLEY

9

10   DATE:  March 17, 2016              */s/ Sean Conley*                              
                                        SEAN CONLEY
11                                      Attorney for Defendants

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-
MCE-AC