A. BYRNE CONLEY, ESQ. SBN 112715
SEAN C. CONLEY, ESQ. SBN 130814
GIBBONS & CONLEY
2185 North California Boulevard, Suite 285
Walnut Creek, CA 94596
Telephone: (925) 932-3600  Fax: (925) 932-1623

Attorneys for Defendants BARRY BOERSMA, HERMAN ROBINSON, JOHN CUNNINGHAM, MIKE KOUTNIK, RAUL MUNOZ, and ROBERT NICHELINI

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| V.W., a minor, by and through her Guardian Ad Litem, Tanaya Barber, Individually and as Successor in Interest of Decedent MICHAEL WHITE,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT NICHELINI, et al.<br><br>Defendants. | CASE NO. 2:12-cv-01629-MCE-AC<br><br>**DECLARATION OF MIKE KOUTNIK IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION**<br><br>Date:  May 19, 2016<br>Time:  2:00 p.m.<br>Place:  Courtroom 7 |

I, Mike Koutnik, declare as follows:

1. I am a named defendant in the above action and make the following declaration from personal knowledge.

2. I am a police officer with the City of Vallejo Police Department and had been an officer with this department for 27 years as of the date and time of the incident on June 15, 2010. At the time of this incident, I was on patrol duty and was wearing my full police uniform.

3. I maintained my training through the Vallejo Police Department in compliance with all

1

DECLARATION OF MIKE KOUTNIK IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT    CASE NO. 2:12-cv-01629-MCE-AC

Police Officers Standards and Training ("POST") requirements during my tenure with the department, and was current on all required training as of the date of this incident.

4. On June 15, 2010, I was on patrol in my marked Vallejo Police Dept. Police Car. I became aware, from statements made on my police radio, that a call for service had been requested at 392 San Marcus Drive in Vallejo California. At one point, I heard the dispatcher direct all available units to go to this address, and I responded to that address.

5. When I arrived at the address, which was in a trailer park, I got out of my car and was told by a fellow officer that it was "code four" inside the residence, which was a trailer. "Code four" meant that the situation inside was under control from the prospective of the police response. I entered the property, and could hear someone yelling and screaming.

6. I began to move personal property out of the hallway area in order to attempt to get a gurney into the location of the bedroom of the residence. The individual, who I had previously heard yelling, continued to yell and scream. It was never a yell of pain, just incoherent yelling. I later learned that this person was Michael White. I did not recognize Mr. White at any time during this incident.

7. I went back into the bedroom and saw Mr. White on the floor kicking his legs. I saw him kick a fireman away who was attempting to hold down Mr. White's legs.

8. I then observed another officer attempting to grab Mr. White's legs, but Mr. White kicked the officer away from Mr. White. Another officer asked for my assistance to restrain Mr. White's legs so that a hobble restraint could be attached to his legs.

9. I tried to gain control of one of Mr. White's legs, but he continued to roll around and kick at me and the other officer. Eventually, I was able to gain control of both legs so that another officer could apply the hobble restraint, binding the two legs together. Throughout these efforts, Mr. White continued yelling and screaming, although he did not form any intelligible words that I could understand.

10. Mr. White had already been handcuffed by the time I had arrived. Even handcuffed and with a hobble restraint on his legs, Mr. White continued to move around and struggle, but was not

able to get out of the restraints. Because of the clutter in the house, we were not able to get the gurney into the bedroom. I took one of Mr. White's arms, and with the assistance of other officers holding up other of Mr. White's limbs, we were able to carry Mr. White out of the house.

11. During the time that we carried Mr. White out of the house and placed him onto the gurney just outside the front door, Mr. White continued to wiggle and struggle with the police officers carrying him to the gurney.

12. As soon as we placed Mr. White on the gurney, one of the fire department personnel began assessing Mr. White, and stated that he had a clear airway and was breathing properly. I placed Mr. White onto his right side, and Mr. White continued to roll around on the gurney.

13. Some other officer undid the hobble restraint. I assisted another officer in uncuffing Mr. White, and re-handcuffing him to the gurney so that the medical personnel could continue to assist Mr. White.

14. I did not use any weapon on Mr. White, nor did I strike him. The only use of force I applied to Mr. White was to restrain his legs so that the hobble restraint could be applied by another officer. At no time did I see any other officer use any force against Mr. White other than to try to hold him down so that the hobble restraint could be applied. In particular, I did not see anyone use a taser, a carotid restraint, or place any weight on Mr. White's torso.

15. I did not recognize Mr. White at the time of this incident.

16. At no time did Mr. White state that he was in pain or that he was having any trouble breathing.

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

Dated:

By: *[signature]*
MIKE KOUTNIK

3

DECLARATION OF MIKE KOUTNIK IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-MCE-AC

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623