CLAUDIA M. QUINTANA
City Attorney, SBN 178613
By: FRANK A. SPLENDORIO
Deputy City Attorney, SBN 272601
CITY OF VALLEJO, City Hall
555 Santa Clara Street, P.O. Box 3068
Vallejo, CA 94590
Telephone: (707) 648-4545  Fax: (707) 648-4687
Email: frank.splendorio@cityofvallejo.net

A. BYRNE CONLEY, ESQ. SBN 112715
SEAN C. CONLEY, ESQ. SBN 130814
GIBBONS & CONLEY
2185 North California Boulevard, Suite 285
Walnut Creek, CA 94596
Telephone: (925) 932-3600  Fax: (925) 932-1623

Attorneys for Defendants BARRY BOERSMA, HERMAN
ROBINSON, JOHN CUNNINGHAM, MIKE KOUTNIK,
RAUL MUNOZ, and ROBERT NICHELINI

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| V.W., a minor, by and through her Guardian Ad Litem, Tanaya Barber, Individually and as Successor in Interest of Decedent MICHAEL WHITE,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT NICHELINI, et al.<br><br>Defendants. | CASE NO. 2:12-cv-01629-MCE-AC<br><br>**DECLARATION OF JOHN CUNNINGHAM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION**<br><br>Date:  May 19, 2016<br>Time:  2:00 p.m.<br>Place: Courtroom 7 |

I, John Cunningham, declare as follows:

1. I am a named defendant in the above action and make the following declaration from

---

1

DECLARATION OF JOHN CUNNINGHAM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-MCE-AC

personal knowledge. I have reviewed my interview by investigators after this incident which has refreshed my recollection as to some of these facts.

2. I was a sworn police officer with the Vallejo Police Department, and been with the department for 24 years on the date of the subject incident, June 15, 2010. On that date, I was assigned to patrol with the Vallejo Police Department and was in full uniform.

3. I maintained my training through the Vallejo Police Department in compliance with all Police Officers Standards and Training ("POST") requirements during my tenure with the department, and was current on all required training as of the date of this incident.

4. On June 15, 2010, I received a radio broadcast from the Vallejo Police Department dispatcher to go to 395 San Marcus Dive to assist with a call. The dispatcher indicated that an elderly victim had been choked and thrown to the ground, and that the suspect was at a neighboring property at 392 San Marcus Drive. The dispatcher also indicated that medical personnel would be staging in the area, which I understood means that the medical personnel will wait in the vicinity of the scene of the incident until police officers can secure the scene, and make it safe for medical personnel to enter.

5. Although the dispatcher stated that the victim requested an ambulance for her attacker, rather than specifying that she needed an ambulance, my approach to the scene remained the same. As a police officer, I had to go onto the scene ahead of the staging medical personnel to determine whether the scene was safe and secure for medical personnel to enter, given the reported battery.

6. I responded to the dispatcher's call by indicating that the battery on my portable radio was dead and that I would have to come to the station before dispatching to this call. I was directed by dispatch to go directly to the call without having my portable radio fixed.

7. When I first arrived on the scene, I saw Cpl. Barry Boersma and we went to the house of the victim, later identified as Ms. Claros, at 395 San Marcus Drive. Ms. Claros indicated that the suspect, later identified as Michael White, had attacked her and attempted to choke her and had thrown her to the ground.

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623

2

DECLARATION OF JOHN CUNNINGHAM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT                CASE NO. 2:12-cv-01629-MCE-AC

8. I saw a woman standing in front of 392 San Marcus Drive and spoke to her. The woman, later identified as Ms. Villasenor, stated that Michael White, a guest in her house, was "crazy" and possibly high on drugs, and had attacked her neighbor. Mr. White then came back to 392 San Marcus Drive and pushed Ms. Villasenor out of his way. Ms. Villasenor was very much afraid of Mr. White. She may have also mentioned that Mr. White was on parole. I asked Ms. Villasenor permission to enter her house and directions to where Mr. White was located so that I could talk to Mr. White. Ms. Villasenor gave me permission to enter her home and directed me to Mr. White's location.

9. Once inside, I arrived at a bedroom and I learned that Mr. White was in the bathroom behind a closed door and he repeatedly refused officers' requests to come out. I became concerned because I could not tell whether or not Mr. White was armed, but was aware from my training and years of experience that bathrooms typically have many objects which can be used as weapons. I was also aware of Mr. White's recent violent attack of his neighbor and pushing Ms. Villasenor and report that he was acting irrationally and that he may be under the influence of drugs. I was also aware that the bedroom that we were standing in was small and cluttered and it was very difficult to maneuver around the bathroom door.

10. I continued to ask Mr. White to come out to talk to us and tell us his side of the story. Mr. White refused to talk to us and refused to come out.

11. I began moving objects around in the bedroom in order to get any potential weapons away from the bathroom door. I had to move some forks near the door I worried could become weapons if Mr. White crashed out of the bathroom. I believed that there was a strong possibility that there would be a fight with Mr. White based upon his recent violent history, his refusal to cooperate with our verbal request that he come outside, and reported drug intoxication. As I was trying to clear the area around the bathroom door of weapons, Cpl. Boersma and Officer Munoz came into the bedroom.

12. Cpl. Boersma pushed at the bathroom door and then announced that the suspect appeared to be putting drugs into his mouth. I told Mr. White that we did not care about his drugs and we

3

DECLARATION OF JOHN CUNNINGHAM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT   CASE NO. 2:12-cv-01629-MCE-AC

just wanted to talk to him and wanted him to come out of the bathroom. I was very concerned about being forced to fight with Mr. White in that very cramped space. Mr. White refused to come out, refused to engage in any conversation with us, and continued to push back at the door when we attempted to open it.

13. Mr. White continued to push back at the door as officers tried to open it, and at one point Mr. White pushed on the door so hard that it came off of its hinges. A struggle ensued between Cpl. Boersma and Mr. White for control of the door. Mr. White was exhibiting unnaturally great strength and was very combative, using the door as a weapon to push at the officers. At that point, Officer Munoz deployed his taser in dart mode, but it did not appear to have any lasting effect on Mr. White. Mr. White froze and yelled when the taser was applied, but returned to fighting at the door as soon as it stopped. I was only aware of Officer Munoz applying his taser for one cycle.

14. I deployed my taser, in dart mode, at Mr. White. I cycled it for five seconds, and Mr. White stopped fighting momentarily, but immediately began fighting and struggling against the officers trying to gain access to the bathroom as soon as the taser cycle ended. I believe I again cycled my taser two times. Each time Mr. White would momentarily stop struggling with the officers trying to enter the bathroom, but then he would immediately continue to fight against the officers as soon as the taser stopped.

15. Eventually, the door was moved aside and Cpl. Boersma and Officer Munoz attempted to handcuff Mr. White inside the tiny cluttered bathroom. Mr. White violently resisted, elbowing, punching, and kicking at the officers, as well as pulling his hands away to prevent the handcuffing behind his back. Because of the small and confined space, it was difficult for all of the officers present to try to put hands on Mr. White. For the most part, only officer Munoz and Cpl. Boersma were in a position to try to put Mr. White's hands behind his back to handcuff him.

16. I observed Mr. White kicking and wiggling and pushing at the officers to fight back against their attempt to handcuff him. Cpl. Boersma attempted to apply a carotid restraint to Mr.

4

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623

DECLARATION OF JOHN CUNNINGHAM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-MCE-AC

White, but it did not appear to be effective. I could not see fully everything that was going on in the bathroom, but eventually Cpl. Boersma and Officer Munoz were able to get Mr. White's hands behind his back and get him handcuffed.

17. As soon as Mr. White was handcuffed, I sat him up and observed him clenching his teeth as if trying to bite through something. I began to massage the pressure points around Mr. White's ears and upper jaw to get his mouth open. I told him that we did not care about the drugs and we just wanted him to continue to breathe properly. I especially did not want Mr. White to swallow any drugs if he had any in his mouth. Mr. White did open his mouth occasionally from time to time, but would begin clenching his mouth shut again.

18. I was aware that other officers had immediately summoned the medical personnel who had been staging. Although Mr. White was handcuffed, he began to struggle again, moving back and forth and using his feet to kick at the officers while he screamed and yelled. Officer Koutnik arrived and assisted in holding the suspect's legs so we could place a hobble restraint to bind his legs to prevent him from kicking people. Mr. White was then laid on his side, and I observed that he was still breathing and moving around.

19. During this entire encounter, Mr. White never cooperated in our attempts to talk things out with him. We advised him that we were the police and wanted to get his side of the story based upon the reports we had received from others. I repeatedly urged Mr. White to relax and told him that we did not care about whatever drugs he had. Mr. White never cooperated with any of the officers' requests or orders. He did not verbally or physically comply with our requests to come out, to talk to us about what was going on, to get on the ground, and orders to put his hands behind his back for cuffing, or to stop kicking people. We made every attempt to get Mr. White to cooperate peacefully, but he never cooperated with any request or instruction. I did not recognize Mr. White during this encounter.

20. I observed no unnecessary force being applied to Mr. White. I observed no weight being applied to Mr. White, and no placement of Mr. White in prone position, beyond that necessary to place the hobble restraint.

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623

5

DECLARATION OF JOHN CUNNINGHAM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-MCE-AC

21. At no time did Mr. White state that he was in pain or that he was having any trouble breathing.

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

Dated: 03/22/16

By: _____

JOHN CUNNINGHAM

Gibbons & Conley
ATTORNEYS AT LAW
1137 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
fax (925) 932-1623