CLAUDIA M. QUINTANA
City Attorney, SBN 178613
By: FRANK A. SPLENDORIO
Deputy City Attorney, SBN 272601
CITY OF VALLEJO, City Hall
555 Santa Clara Street, P.O. Box 3068
Vallejo, CA 94590
Telephone: (707) 648-4545  Fax: (707) 648-4687
Email: frank.splendorio@cityofvallejo.net

A. BYRNE CONLEY, ESQ. SBN 112715
SEAN C. CONLEY, ESQ. SBN 130814
GIBBONS & CONLEY
2185 North California Boulevard, Suite 285
Walnut Creek, CA 94596
Telephone: (925) 932-3600  Fax: (925) 932-1623

Attorneys for Defendants BARRY BOERSMA, HERMAN
ROBINSON, JOHN CUNNINGHAM, MIKE KOUTNIK,
RAUL MUNOZ, and ROBERT NICHELINI

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

V.W., a minor, by and through her Guardian ) CASE NO. 2:12-cv-01629-MCE-AC
Ad Litem, Tanaya Barber, Individually and )
as Successor in Interest of Decedent )
MICHAEL WHITE, )
                                        )  **DECLARATION OF HERMAN**
            Plaintiffs,                 )  **ROBINSON IN SUPPORT OF**
                                        )  **DEFENDANTS' MOTION FOR**
      v.                                )  **SUMMARY JUDGMENT AND/OR**
                                        )  **SUMMARY ADJUDICATION**
ROBERT NICHELINI, et al.                )
                                        )  Date:   May 19, 2016
Defendants.                             )  Time:   2:00 p.m.
                                        )  Place:  Courtroom 7

I, Herman Robinson, declare as follows:

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623

1

DECLARATION OF HERMAN ROBINSON IN SUPPORT OF DEFENDANTS' MOTION FOR       CASE NO. 2:12-cv-01629-MCE-AC
SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

1. I am a named defendant in the above action and make the following declaration from personal knowledge.

2. I am a lieutenant with the Vallejo Police Department and had been a police officer for 38 years as of the time of this subject incident, on June 15, 2010. I was a patrol sergeant with the Vallejo Police Department at the time of this incident, and was dressed in full police uniform.

3. I maintained my training through the Vallejo Police Department in compliance with all Police Officers Standards and Training ("POST") requirements during my tenure with the department, and was current on all required training as of the date of this incident.

4. At about 4:15 p.m. on June 15, 2010, I heard the dispatcher broadcast a report indicating that an individual had attempted to choke an elderly woman at 395 San Marcus Drive in Vallejo California. I understood that medical care had also been requested, and would be staging at the scene. I understood that to mean that medical care would be sent to the vicinity of this incident, but directed to wait until the responding police officers had determined that the scene was safe for the medical personnel to enter.

5. At the time of the call, I had understood that the victim of the assault was requesting an ambulance, although it appears that the victim had apparently requested medical assistance for the suspect who had assaulted her. This would not change my approach to this scene. In either case, it was necessary to stage medical personnel while officers entered the scene to determine whether the scene was safe for medical personnel to enter because of the reported criminal battery.

6. I heard the dispatcher report that the man who had attempted to choke the reporting party victim had left the victim's property at 395 San Marcus Drive, and had gone to 392 San Marcus Drive in Vallejo.

7. I had been informed that Officer Cunningham's radio battery on his portable radio had died and heard that he had been dispatched to this call. Because I did not wish to have Officer Cunningham out of radio contact, I decided to respond to this call also.

8. Upon arriving at the scene outside of 395 San Marcus Drive, an unknown adult man, in his

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623

2

DECLARATION OF HERMAN ROBINSON IN SUPPORT OF DEFENDANTS' MOTION FOR        CASE NO. 2:12-cv-01629-MCE-AC
SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

early 50's and with a lot of tattoos, waived me down and stated that someone was acting crazier than hell, and was high on dope. I understood this individual to be describing the suspect, who was later identified as Michael White. At no time before the conclusion of this encounter with Mr. White did I recognize Mr. White from any previous encounters.

9. I contacted the reporting party, a woman in her 60s, and later identified as Ms. Claros, on the porch at 395 San Marcus Drive. She reported that a large black man had come across the street, and that she did not know him. She told me, that for no reason, the suspect, Mr. White, had forced his way onto her property, grabbed her by the neck, and began choking her. Ms. Claros told me that Mr. White had then thrown her to the ground. She said that the suspect was staying at 392 San Marcus Drive.

10. I then went to speak to a woman standing outside of 392 San Marcos Drive.

11. In front of the trailer at 392 San Marcos Drive, I encountered a woman in her 50s who identified herself as the owner of the property, and was later identified as Ms. Villasenor. Ms. Villasenor told us that Mr. White was staying with her, although he did not permanently live in the residence. She stated that Mr. White looked like he was wild and crazy and high on drugs. She said that she was afraid of Mr. White and wanted him removed from her home. She identified Mr. White by name and said that Mr. White was on parole. She also stated that Mr. White had attacked Ms. Villasenor's neighbor across the street.

12. Inside the trailer, Officer Cunningham and I located Mr. White in the bathroom off of the master bedroom. The door from the bedroom to the bathroom was slightly open, and Officer Cunningham and I tried to talk to Mr. White for several minutes in order to get him to voluntarily come out of the bathroom. Mr. White refused to come out and/or to talk to us.

13. We told Mr. White that we were here to help him, that we were the police, and that we only wished him to come out to talk to us. I was extremely concerned at that time because of Mr. White's recent violent behavior and the fact that he was out of sight in the bathroom. I was aware from my decades of training and experience that bathrooms can contain many potential weapons, which can create a dangerous situation for both the officers and the

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

3

DECLARATION OF HERMAN ROBINSON IN SUPPORT OF DEFENDANTS' MOTION FOR          CASE NO. 2:12-cv-01629-MCE-AC
SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

individual in the bathroom. The information we had received was that Mr. White was acting irrationally, and we did not know what his intentions were.

14. Mr. White refused to talk to us, and only responded irrationally and with unintelligible speech. Mr. White refused to voluntarily come out of the bathroom.

15. In order to see what Mr. White was doing we tried to open the bathroom door by one of the officers pushing it open into the bathroom, but each time we tried to do this, Mr. White forcefully pushed the door back against us. Officer Cunningham, who was able to see partway into the bathroom, told me that Mr. White was a very large man and that we would need more help. We continued to ask Mr. White to come out, but he refused, and only yelled back at us incomprehensibly.

16. Other officers arrived and began trying to push the door open, but Mr. White pushed back and prevented our entry into the bathroom. I was behind the Officers who were at the door and attempting to gain entry into the bathroom. The bedroom was very cluttered and there was very little room to move around. I did not have a direct line of sight into the bathroom even when the door was partially open, and continued to be concerned that I was unable to see what Mr. White was doing in the bathroom.

17. Based upon a few glimpses of Mr. White that I managed to obtain, as well as his response to officers and recent violent attack of his neighbor, and reports that he was intoxicated on a controlled substance, as well as his irrational behavior in our presence and his heavy build and resistance to efforts to get him to come out of the bathroom, I was concerned for the safety of all of the officers as well as Mr. White himself.

18. During the struggle to control the door, one of the officers stated that Mr. White appeared to be trying to eat some narcotics. This was a great concern because, in addition to being destruction of evidence, it could harm Mr. White and potentially increase his combativeness with the officers.

19. At one point, as the Officers were struggling against Mr. White to try to get the door open, the bathroom door came off its hinges. The space was very confined, and it was difficult

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623

4

to get into the position to try to manage the situation with Mr. White. Mr. White continued to use the door as a barrier between himself and the other officers.

20. During the struggle at the door, I heard two taser applications, but neither appeared to be effective in stopping Mr. White's resistance and Mr. White continued to struggle against the officers for control of the door. I remained behind Cpl. Boersma, Officer Munoz, and Officer Cunningham as they continued to struggle to get through the door to gain control of Mr. White. Throughout this struggle, officers ordered Mr. White to get on the ground, but he refused to do so, or even to talk to us, and his only response was to push back very hard to keep us from getting past the door.

21. Once the door was finally moved out of the way, I could see that Mr. White was an adult of about 50 years of age, well built, with an extremely well-defined upper body, not wearing a shirt, and about 5'8" tall and weighing about 250 lbs. Mr. White was very oily and sweaty, and was actively resisting the officers' attempts to place handcuffs on Mr. White, once the officers were able to get past the door and into the bathroom. Even with all of the officers present, and given the confined space Mr. White's enraged and physically resistive behavior, it was a struggle to place him in handcuffs. Mr. White appeared to be on drugs and seemed to have unnaturally great strength, so that officers could not get control over him despite each officer trying to hold Mr. White.

22. At one point while the Officers were attempting to handcuff Mr. White, and Mr. White continued to pull away and flail against the officers to prevent them from gaining control of his arms, I observed Cpl. Boersma attempt to apply a carotid restraint on Mr. White. The attempt did not appear to be effective, and Mr. White continued to struggle against the officers.

23. Eventually, the officers were able to place Mr. White in handcuffs. The staging medical personnel were immediately summoned to the scene. Once Mr. White was in handcuffs, and was seated up, he suddenly went limp. Within 15 seconds, Mr. White then suddenly became active again and again began moving back and forth and attempting to resist the

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623

5

officers' attempts to control him. The medical personnel came into the trailer to render aide to Mr. White. Mr. White responded by resisting their efforts, including turning and rolling away from them and kicking the medical personnel. The medical personnel were unable to assess or treat Mr. White because he continued to attack them, despite their attempts to calm Mr. White down. The medical personal had to retreat because Mr. White was not under control and was attacking them. It required several officers to hold down Mr. White so that a hobble restraint could be applied to restrain his legs. I did not see anyone put any weight on Mr. White's torso, and did not see anyone place a knee in his back.

24. Even after the hobble was applied, Mr. White continued to squirm and roll over.

25. Medical personnel were unable to bring a gurney into the trailer because of the clutter and narrow passageways. Several officers picked up Mr. White and carried him to the gurney outside. I observed him on the gurney, laying on his side, and he appeared to be conscious and did not appear to be in any particular distress. That was the last time I saw Mr. White.

26. At no time during this incident did I recognize Mr. White from any past encounter.

27. At no time did Mr. White state that he was in pain or that he was having any trouble breathing.

28. Defendant Robert Nichelini retired from the Vallejo Police Department as its Chief of Police in 2012. I have been employed by the Vallejo Police Department for over 40 years, and am still currently employed by the Department. He was not on scene at any point during the confrontation with Mr. White on June 15, 2010.

29. Mr. White never cooperated with any of the officers' requests or orders. He did not verbally or physically comply with our requests to come out of the bathroom, orders to get on the ground, and orders to put his hands behind his back for cuffing, and to stop kicking people.

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA. 94596
(925) 932-3600
Fax (925) 932-1623

DECLARATION OF HERMAN ROBINSON IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-MCE-AC

1   We made every attempt to get Mr. White to cooperate peacefully, but he never cooperated with any

2   request or instruction.

3          I declare under penalty of perjury under the laws of the United States of America that the

4   forgoing is true and correct.

5

6   Dated:

7

8   By: _____

9        HERMAN ROBINSON

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Williams & Conley
ATTORNEYS AT LAW
1173 N. California Blvd
Suite 110
Walnut Creek, CA 94598
(925) 833-2000
Fax (925) 932-1620

7