1  CLAUDIA M. QUINTANA
2  City Attorney, SBN 178613
   By: FRANK A. SPLENDORIO
3  Deputy City Attorney, SBN 272601
   CITY OF VALLEJO, City Hall
4  555 Santa Clara Street, P.O. Box 3068
   Vallejo, CA 94590
5  Telephone: (707) 648-4545  Fax: (707) 648-4687
6  Email: frank.splendorio@cityofvallejo.net

7  A. BYRNE CONLEY, ESQ. SBN 112715
   SEAN C. CONLEY, ESQ. SBN 130814
8  GIBBONS & CONLEY
   2185 North California Boulevard, Suite 285
9  Walnut Creek, CA 94596
10 Telephone: (925) 932-3600  Fax: (925) 932-1623

11 Attorneys for Defendants BARRY BOERSMA, HERMAN
   ROBINSON, JOHN CUNNINGHAM, MIKE KOUTNIK,
12 RAUL MUNOZ, and ROBERT NICHELINI

13

14              UNITED STATES DISTRICT COURT

15            EASTERN DISTRICT OF CALIFORNIA

16

17 V.W., a minor, by and through her Guardian ) CASE NO. 2:12-cv-01629-MCE-AC
18 Ad Litem, Tanaya Barber, Individually and   )
   as Successor in Interest of Decedent        )
19 MICHAEL WHITE,                              )
                                               )  **DECLARATION OF BARRY BOERSMA**
20              Plaintiffs,                     )  **IN SUPPORT OF MOTION FOR**
                                               )  **SUMMARY JUDGMENT AND/OR**
21        v.                                    )  **PARTIAL SUMMARY JUDGMENT**
                                               )
22 ROBERT NICHELINI, et al.                    )  Date:   May 19, 2016
                                               )  Time:   2:00 p.m.
23 Defendants.                                 )  Dept:   Courtroom 7
                                               )
24                                             )

25

26

27

28

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 116
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

1

DECLARATION OF BARRY BOERSMA IN SUPPORT OF MOTION FOR          CASE NO. 2:12-cv-01629-MCE-AC
SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

I, Barry Boersma, declare as follows:

1.  I am a named defendant in the above litigation and make the following declaration from personal knowledge.

2.  I had been sworn police officer with the City of Vallejo Police Department for 20 years at the time of the subject incident, on June 15, 2010. At the time of the incident, I was a corporal with the Vallejo Police Department, and was in full uniform at the time of the encounter with Mr. White.

3.  I maintained my training through the Vallejo Police Department in compliance with all Police Officers Standards and Training ("POST") requirements during my tenure with the department, and was current on all required training as of the date of this incident.

4.  On the afternoon of June 15, 2010, I heard the dispatcher report a call of a man who had choked his neighbor and run back to a nearby house on San Marcus Drive in Vallejo. I also heard the dispatcher indicate that medical providers would be dispatched the scene, but would stage outside, meaning that they would not go into the location of the incident until the police officers had cleared the scene to assure that it was safe for the medical personnel.

5.  The dispatcher indicated that the victim was at 395 San Marcus Drive, and that the suspect had run back into 392 San Marcus Drive.

6.  Although the dispatcher stated that the victim requested an ambulance for her attacker, rather than specifying that she needed an ambulance, my approach to the scene remained the same. As a police officer, I had to go onto the scene ahead of the staging medical personnel to determine whether the scene was safe and secure for medical personnel to enter, given the reported battery.

7.  I responded to this call for service and arrived at the scene, which was a trailer park, at about the same time as Sgt. Robinson and Officer Cunningham of the Vallejo Police Department. I observed an adult male in his late 40's or his 50's with a lot of tattoos who waived me down. That individual stated that the suspect was "crazy," that he had lost his

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623

2

DECLARATION OF BARRY BOERSMA IN SUPPORT OF MOTION FOR          CASE NO. 2:12-cv-01629-MCE-AC
SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

1 mind from dope, and that he had attacked a woman at 395 San Marcus Drive.

2 8. I next spoke to the identified victim, later identified as Ms. Claros, a woman of about 60

3 to 70 years of age, on her porch at the trailer at 395 San Marcos Drive. She told me that

4 she was on her porch when the suspect, later identified as Michael White, who was living

5 across the street, pushed open her gate, grabbed her by the throat, and began choking her.

6 Ms. Claros reported that Mr. White then shoved her against the wall and then shoved her

7 onto the ground. Ms. Claros declined an offer of medical service.

8 9. Ms. Claros indicated that she knew of no reason that Mr. White would attack her, but

9 indicated that Mr. White looked "crazy" and that she believed he was high on drugs.

10 10. I went over to the trailer at 392 San Marcos drive and met a woman later identified as Ms.

11 Villasenor, who told me that she lived at that address. I asked her who the suspect was,

12 and she identified him as Michael White. I did not recognize Mr. White during this

13 incident. Ms. Villasenor stated that Mr. White was on parole, that he was taking drugs and

14 was "going crazy." She told me that Mr. White was using "crack," but that it could be any

15 drugs that he was taking now. Ms. Villasenor also told me that White had shoved her, that

16 he was going "crazy," and that she had fled the trailer in fear of Mr. White. She told me

17 that Mr. White was a friend of hers and that she was trying to help him out by letting him

18 stay there, but she now wanted him removed.

19 11. I then went into the trailer, where Sgt. Robinson and Officer Cunningham indicated that

20 they had attempted to persuade Mr. White to come out of the bathroom, but he was

21 refusing to comply. Sgt. Robinson and Officer Cunningham then identified themselves

22 again as Vallejo Police Officers and told Mr. White that they wanted to talk to him, and

23 asked him to please come out of the bathroom. Mr. White still refused to come out or talk

24 to us about what he was doing. Repeated attempts to get Mr. White to come out

25 voluntarily failed because Mr. White refused to cooperate.

26 12. Mr. White was in a bathroom next to a bedroom deep inside the trailer. The bedroom

27 where the other officers and I stood was quite cluttered. The bathroom door was not

28

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623

3

DECLARATION OF BARRY BOERSMA IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-MCE-AC

1   closed all the way, and when one of the officers pushed on the door to open it, Mr. White
2   pushed back hard on the door to keep it from opening.

3   13. Officer Cunningham and Sgt. Robinson had already told me that Mr. White's demeanor
4   was very agitated, and I was extremely concerned that White was actively fighting against
5   opening the door, refusing to talk to the officers, and refusing to comply with the request
6   that he come out of the bathroom. I was concerned, based upon my training and decades
7   of experience, that bathrooms frequently contain many objects that can be used as
8   weapons. I was concerned particularly because of Mr. White's recent history of violence,
9   reported and observed agitation and combativeness, and the fact that I could not observe
10   what Mr. White was doing because he was actively preventing the officers from opening
11   the door to the bathroom. We continued to ask Mr. White to come out for about a minute
12   but he refused to do so.

13   14. After numerous requests were made to Mr. White to come out, I pushed hard on the door
14   and saw Mr. White holding a plastic bag in one hand with what appeared to be illegal
15   drugs, possibly meth. He had the baggie up to his mouth and appeared to chew on it. I
16   became very concerned that Mr. White was trying to swallow the baggie of narcotics. I
17   believed that this made the situation urgent, as swallowing the drugs would be extremely
18   dangerous to Mr. White, in addition to destroying evidence.

19   15. I received drug recognition training in the Police Academy, and had been involved in
20   patrol officer drug enforcement for 20 years by the time of this incident. I was very
21   familiar with the appearance of street narcotics and seizing and submitting to laboratory
22   testing drugs seized during arrests during my decades on patrol.

23   16. I announced to the other officers that Mr. White appears to be chewing on a baggie of
24   drugs. At that point, other officers began pushing on the door.

25   17. I observed that Mr. White had no shirt on, and was a large, husky man who was quite
26   muscular. Mr. White appeared to be surprised when he saw that I saw him and he
27   immediately ducked behind the door out of view. I could not see both of his hands, and

28

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623

4

DECLARATION OF BARRY BOERSMA IN SUPPORT OF MOTION FOR          CASE NO. 2:12-cv-01629-MCE-AC
SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

1    did not know whether he was armed or not, or what he was doing beyond pushing back on

2    the door. I also could not see into the bathroom to determine whether any weapons were

3    present.

4    18. Several officers began pushing on the door and Mr. White pushed back, until the door

5    eventually broke off of its hinges. Even after it came off its hinges, Mr. White was

6    continuing to struggle against the officers and use the door to prevent the officers from

7    reaching him, and Mr. White appeared to have unnaturally great strength.

8    19. As soon as I saw the drugs, I told Mr. White to throw the drugs down, and told him that

9    we did not care about the drugs, we just wanted him to come out of the bathroom. Mr.

10    White did not comply with these commands. Officers also repeatedly ordered Mr. White

11    to get on the floor, but he refused to do so. Mr. White appeared to be violently deranged,

12    and needed to be restrained.

13    20. During the struggle to get into the bathroom, Officer Munoz deployed his taser against

14    Mr. White. Mr. White was screaming and yelling, but continued to use the door to try to

15    push the officers away. I could not tell how many times Officer Munoz attempted to

16    activate his taser as Mr. White did not have a typical response.

17    21. Mr. White seemed to have abnormally great strength, and the taser was ineffective at

18    making him stop his resistance. The taser did not make Mr. White stop pushing against the

19    door to keep us out, nor did it make Mr. White get on the ground. After Officer Munoz's

20    application of the taser appeared to be ineffective, Officer Cunningham also fired his

21    taser, but again it did not appear to be effective. Despite Officer Cunningham's

22    application of the taser, Mr. White continued to fight against the Officers' attempt to get

23    past the door. The taser did not appear to have any effect on Mr. White.

24    22. Eventually,  after about one or two minutes of struggle at the door, Mr. White went down

25    to the floor and Officer Munoz and I were able to enter the bathroom. The bathroom was a

26    fairly confined space and it was difficult to maneuver in the bathroom.

27    23. Once I was inside the bathroom, I observed Mr. White kicking at Officer Munoz. Officer

28

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

5

DECLARATION OF BARRY BOERSMA IN SUPPORT OF MOTION FOR          CASE NO. 2:12-cv-01629-MCE-AC
SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

Munoz attempted to grab Mr. White's arms but White flailed back at Officer Munoz and tried to strike Officer Munoz' hands away. Mr. White was not wearing a shirt and was very sweaty and greasy and difficult to get hold of. I tried to grab one of Mr. White's hands but could not get a grip on him. Mr. White pulled his arm away and then elbowed me in the hand and side several times, and pushed himself against me. I was keenly aware of how abnormally strong Mr. White was when he pulled his hand away from me.

24. I saw Officer Munoz punch Mr. White in the shoulder in an attempt to gain control of Mr. White's arm. I was concerned that Mr. White, based upon his recent history of violence, his active resistance to control, including elbowing me, and his abnormally increased strength could potentially take a weapon from one of the officers. I was aware that the tasers proved ineffective on incapacitating Mr. White, and that he was successfully resisting any attempt to gain control of his arms to handcuff him, and he was continuing to elbow me and push back against me. At that point, I attempted to place a carotid restraint on Mr. White.

25. A carotid restraint is not a "choke hold." A "choke hold" would be an arm drawn across someone's throat to attempt to prevent them from breathing by placing pleasure on the front of the throat. I attempted a technique known as the lateral vascular neck restraint, or carotid restraint. The technique involves placing the arm so that the upper arm is on one side of the neck and the forearm is on the other side of the neck, with the elbow in front of the neck, or trachea area. As applied, no pressure is put on the trachea. The purpose of the hold is to attempt to reduce the blood flow through the carotid arteries to the brain.

26. When I attempted to place the hold, I was behind Mr. White and Mr. White lowered his chin, forming a wedge where my elbow was located, and pushed back towards me preventing a complete application of the carotid hold. I attempted to squeeze the sides of Mr. White's neck but Mr. White was pushing back, and continuing to punch Officer Munoz, and I was uncertain if I was able to get an effective hold against him.

27. Within 30 seconds or less, all during which Mr. White continued to elbow me and punch

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

DECLARATION OF BARRY BOERSMA IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT          CASE NO. 2:12-cv-01629-MCE-AC

and kick at Officer Munoz, Mr. White stopped resisting and I immediately stopped my attempt at the carotid restraint. Mr. White did not go completely limp, and I could not determine whether he had passed out. We were able to place Mr. White in handcuffs at that point.

28. As soon as we placed the handcuffs, I noticed that Mr. White, who was sitting up, had his eyes closed and his mouth clenched shut. I could not tell whether Mr. White was breathing properly at that point. I tried but was unable to check for a pulse because he had his chin down and jaws clenched. I was concerned with Mr. White's medical condition so I went outside to obtain a CPR mask, which is an emergency medical device used to assist breathing.

29. When I returned to the trailer moments later, Mr. White appeared to be breathing normally. Mr. White was on the ground in the bedroom moving around and kicking his legs and kicking officers. Medical personnel arrived on the scene almost immediately and I advised them that Mr. White had been tasered and a carotid hold had been attempted.

30. Although no one was touching Mr. White, he suddenly began screaming and kicking at the medical personnel in the trailer. He appeared to be intentionally kicking at the medical personnel and trying to bite one of them, even while they were trying to calm Mr. White to render medical assistance.

31. Eventually, the medical personnel had to retreat because Mr. White was screaming and kicking and would not allow them to begin working on him.

32. Officer Koutnik and another officer arrived in the bedroom and were able to hold Mr. White to apply a hobble restraint. I did not observe anyone place a knee in Mr. White's back.

33. I did not use any force against Mr. White other than that identified above. I had attempted to deploy my taser on Mr. White while we were struggling at the bathroom doorway to get into the bathroom, but my taser did not function when I pulled the trigger.

34. Mr. White  never cooperated with any of the officers' requests or orders. He did not verbally

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623

7

DECLARATION OF BARRY BOERSMA IN SUPPORT OF MOTION FOR          CASE NO. 2:12-cv-01629-MCE-AC
SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

1    or physically comply with our requests to come out of the bathroom or talk to us, orders to

2    get on the ground, and orders to put his hands behind his back for cuffing, and to stop

3    kicking people. We made every attempt to get Mr. White to cooperate peacefully, but he

4    never cooperated with any request or instruction.

5    35. I observed no unnecessary force being applied to Mr. White. I observed no weight being

6    applied to Mr. White, and no placement of Mr. White in prone position, beyond that

7    necessary to place the hobble restraint.

8    36. At no time did Mr. White state that he was in pain or that he was having trouble breathing.

9    I declare under penalty of perjury under the laws of the United States of America that the

10   forgoing is true and correct.

11

12   Dated:

13   By: _____

14

     BARRY BOERSMA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

8

DECLARATION OF BARRY BOERSMA IN SUPPORT OF MOTION FOR         CASE NO. 2:12-cv-01629-MCE-AC
SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT