A. BYRNE CONLEY, ESQ. SBN 112715
SEAN C. CONLEY, ESQ. SBN 130814
GIBBONS & CONLEY
2185 North California Boulevard, Suite 285
Walnut Creek, CA 94596
Telephone: (925) 932-3600  Fax: (925) 932-1623

Attorneys for Defendants BARRY BOERSMA, HERMAN ROBINSON, JOHN CUNNINGHAM, MIKE KOUTNIK, RAUL MUNOZ, and ROBERT NICHELINI

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

V.W., a minor, by and through her Guardian Ad Litem, Tanaya Barber, Individually and as Successor in Interest of Decedent MICHAEL WHITE,

    Plaintiffs,

v.

ROBERT NICHELINI, et al.

Defendants.

CASE NO. 2:12-cv-01629-MCE-AC

**DECLARATION OF RAUL MUNOZ IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION**

Date:  May 19, 2016
Time:  2:00 p.m.
Place: Courtroom 7

I, Raul Munoz, declare as follows:

1. I am a named defendant in the above action and make the following declaration from personal knowledge.

2. I was a sworn police officer with the Vallejo Police Department, and had been a sworn police officer for 22 years at the time of this incident, on June 15, 2010. I was a patrol officer with the Vallejo Police Department and wore a full uniform at the time of the incident.

3. I maintained my training through the Vallejo Police Department in compliance with all

DECLARATION OF RAUL MUNOZ IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT    CASE NO. 2:12-cv-01629-MCE-AC

1

Police Officers Standards and Training ("POST") requirements during my tenure with the department, and was current on all required training as of the date of this incident.

4. At a little after 4:00 p.m. on the afternoon of June 15, 2010, I was in the process of clearing a call for service in Vallejo when I heard the dispatcher report a call for service at the Vallejo mobile estates on San Marcus Drive in Vallejo. Although not dispatched to the incident, I decided to go to that location to assist in the response to that call.

5. The dispatcher reported that a woman indicated that she had been attacked and choked by someone who was staying across the street from her and that medical assistance was being dispatched but staged nearby. I understood that the medical providers were being told to wait outside the scene so that the police department responders could secure the scene and make sure that it was safe for medical personnel to enter.

6. I arrived on scene and I saw Cpl. Boersma outside of a trailer at 392 San Marcus Drive.

7. I entered the trailer with Cpl. Boersma at 392 San Marcus drive and proceeded down a hallway to a room where Sgt. Robinson and Officer Cunningham were already present. I was told by another officer that the suspect was in the bathroom, was believed to be under the influence of drugs, and was not cooperating. I was present to back up the officers who had already undertaken the contact with Mr. White. I heard someone speaking or mumbling inside the bathroom, and the other officers spoke to this person, later identified as the suspect, Michael White. We asked Mr. White to open the door and come out so that we could speak with him, and told him we were police officers. We repeated this request several times over a few minutes but Mr. White refused to come out or talk to us. Officer Cunningham told me that Mr. White was high on drugs and indicated that the situation was a safety issue and that more officers may be needed.

8. There was a bed in the middle of the bedroom with the other officers on either side of it. The bedroom was very cluttered and there was little room to move around. Cpl. Boersma and I were next to the bathroom door.

9. The door was partially open and Mr. White tried to close the door on the officers in the

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623

DECLARATION OF RAUL MUNOZ IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-MCE-AC

bedroom. I was concerned that Mr. White had a very recent history of a violent attack, was not cooperating or complying with police requests to come out of the bathroom, was trying to seal off the officers by closing the door, and was in a bathroom. I know from training and experience as a police officer that bathrooms typically contain many objects which could be used as a weapon. I was aware of the fact that I could not see Mr. White or what he was doing with his hands, and thus could not assure myself that he was unarmed and not preparing to attack the officers.

10. As Mr. White tried to close the door against us, I pushed back on the door to try to keep it from being shut. Mr. White began to push very hard on the door trying to slam it shut on the other officers and me, and struggling against my attempt to keep the door open.

11. Mr. White pushed and pulled on the door very hard and eventually ripped it off of its hinges. Mr. White then held the door with both hands and thrust it forward towards the officers, including myself, in the bedroom, holding the door almost parallel to the ground, using it as a weapon to prevent us from getting in the bathroom. I grabbed the door to try to hold onto it and block it so that it would not strike me.

12. Mr. White struggled to push the door out against us and was refusing to obey commands to get down on the ground. I observed that Mr. White was a very muscular man with no shirt on, and was very sweaty, and appeared to be in a rage and under the influence, I believed to be a stimulant. He seemed to have unnaturally great strength. Based on my experience and training and my observation of Mr. White's appearance and behavior, I believed that Mr. White was under the influence of stimulants and was irrational and very dangerous, armed or unarmed.

13. Mr. White continued to struggle against the officers and use the door as a weapon to prevent us from entering the bathroom. Given his recent history of violence, his enraged demeanor, seemingly unnatural strength, and apparent drug intoxication, I was concerned that if Mr. White was able to get out of the bathroom he could assault any of us and even attempt to take a weapon from us. I believed that I would have had a difficult time

3

DECLARATION OF RAUL MUNOZ IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-MCE-AC

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623

defending against Mr. White because of his apparent physical strength and mental condition. For that reason, I decided to fire my taser, in dart mode, which I aimed at Mr. White's stomach area. When I applied the taser, Mr. White appeared to tense up and flex his muscles, but it appeared as though he fought through the effects of the taser. The taser appeared to have minimal effect at best, and Mr. White continued to push at the door against the officers. Eventually, I was able to pull the door away from Mr. White and move it out of our way.

14. At that point, Mr. White charged toward the threshold of the bathroom where I was standing and the other officers were grouped, and to prevent him from getting to the officers, I activated my taser for a second cycle, but it appeared to have no effect whatsoever. I attempted another cycle of the taser, but it again had no apparent effect.

15. During the entire time we are struggling at the door, including when I applied the taser, officers were repeatedly ordering Mr. White to get on the floor. At no time did Mr. White comply, or even verbally respond to us. All of the officers present were dressed in full police uniforms. I saw Mr. White looking out at us, and he could see that we were the police.

16. During the struggle at the doorway, I heard another officer say that Mr. White had something in his hand be believed was drugs and I saw Mr. White holding a plastic bag with a white substance in it, but I was only able to see it for a moment as Mr. White kept moving around.

17. Mr. White charged at the bathroom door again and I made another attempt to cycle my taser to subdue Mr. White, but the taser again had no effect whatsoever or Mr. White.

18. Eventually, Mr. White leaned forward and put one hand on the ground, so I was able to enter the bathroom. Cpl. Boersma was also able to get into the bathroom, but the room was small and cluttered and there was very little room to move around.

19. Cpl. Boersma and I attempted to apply handcuffs to Mr. White. I grabbed one of Mr. White's hands and attempted to push Mr. White to the ground, but Mr. White fought back

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623

4

DECLARATION OF RAUL MUNOZ IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:12-cv-01629-MCE-AC

and tried to push his way back up again. Mr. White continued to pull his arm away and, because he was very sweaty and unnaturally strong, I was not able to control his arm even using both of my hands. I then struck Mr. White on his right side to try to subdue him. He flexed and continued to fight against my attempt to control his arm. I struck a second time, but again he did not stop noticeably. I struck Mr. White a third time and he relaxed his arm. I was able to get a handcuff on one of Mr. White's hands and continue to try to get the hand pulled behind his back.

20. Mr. White then continued his struggle of pulling away from the officers and flailing and yelling. It required all of my strength to keep his one arm behind his back. During this entire struggle, Mr. White was yelling and screaming and appeared to be physically out of control. Cpl. Boersma and I continued to use all of our effort to get both of Mr. White's hands behind his back and Mr. White continued to actively fight and resist and flail and kick to prevent us from doing so. Eventually, we were able to get Mr. White handcuffed behind his back. It took all of Cpl. Boersma and my strength to get Mr. White handcuffed.

21. I immediately called the dispatcher to tell the staged medical personnel to come onto the scene. After Mr. White was handcuffed, he went limp and we put Mr. White in a seated position. I felt for a pulse and found a strong pulse present. After a few moments, suddenly and without warning Mr. White became very active again, yelling and rolling and fighting against us and trying to get up.

22. The paramedics arrived on scene very shortly after my request to the dispatcher, and Mr. White continued to kick at the officers and firefighter paramedics. Mr. White refused requests to calm down and stop yelling and kicking, so the medics were not able to tend to him. In order to regain control of Mr. White so the medics could examine him, several officers placed a hobble restraint around Mr. White's legs.

23. I very briefly placed my knee on Mr. White's back to keep him pinned down so that the other officers could gain control of his legs to place the hobble restraint to prevent Mr. White from kicking anybody else. As soon as the hobble restraint was applied to Mr.

White's legs, I removed my knee from Mr. White's back. I applied the least amount of weight on Mr. White's back that I could in order to accomplish the task of holding him down so that the hobble could be applied. I applied the force for only the period of time necessary to get the hobble restraint placed on Mr. White's back.

24. At every point in time from when I first entered the scene forward, officers were asking Mr. White to cooperate, but at no point did he stop resisting even when handcuffed, until the hobble was placed, except for the brief period immediately after he was handcuffed.

25. As soon as the hobble was applied, I turned Mr. White on his side. Very shortly thereafter, several officers carried Mr. White outside to a waiting gurney for the paramedics and firefighters to attend to Mr. White.

26. I did not recognize Mr. White at any time during this incident. Mr. White made no statements of being in pain or distress at any time during this encounter or having any trouble breathing, nor did he make any intelligible statements at any time that I heard.

27. At no time did Mr. White state that he was in pain or that he was having any trouble breathing.

28. Mr. White never cooperated with any of the officers' requests or orders. He did not verbally or physically comply with our requests to come out, orders to get on the ground, and orders to put his hands behind his back for cuffing, or to stop kicking people. We made every attempt to get Mr. White to cooperate peacefully, but he never cooperated with any request or instruction.

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

Dated:

By: _____
RAUL MUNOZ

6
DECLARATION OF RAUL MUNOZ IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT
CASE NO. 2:12-cv-01629-MCE-AC