JOHN L. BURRIS, Esq./ State Bar #69888
BENJAMIN NISENBAUM, Esq./ State Bar #222173
LAW OFFICES OF JOHN L. BURRIS
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone:     (510) 839-5200
Facsimile:     (510) 839-3882

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| V.W., a minor, by and through her Guardian Ad Litem, Tenaya Barber, Individually and as Successor in Interest of Decedent MICHAEL WHITE,<br><br>                    Plaintiff,<br><br>     vs.<br><br>ROBERT NICHELINI, et al.,<br><br>                    Defendants. | Case No. 2:12-cv-01629-MCE-AC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>**TIME:  2:00 p.m.**<br>**DATE:  May 19, 2016**<br>**Courtroom No. 7**<br><br>**Honorable Morrison C. England** |

Pursuant to Eastern District of California Local Rule 260(a), Plaintiff, submits the following response to Defendants' Statement of Undisputed Facts in Support of her Opposition to Defendant's Motion for Summary Judgment.

| UNDISPUTED FACT | SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSE |
|---|---|---|
| 1.   Defendant ROBERT NICHELINI retired as Chief of Police in 2012. He was not present at the scene of the incident which is the subject of this lawsuit. | [Declaration of Robinson, ¶28.] | Undisputed |
| 2.   All of the defendant officers present at the scene of the subject incident were wearing full Vallejo Police Department uniforms. | [Declaration of Munoz, ¶2; Koutnik, ¶2; Robinson, ¶2; Cunningham, ¶2; Boersma, ¶2.] | Undisputed |
| 3.   On June 15, 2010, a Vallejo Police Department dispatcher broadcast that a woman at 395 San Marcus Drive reported that a man had choked her and then gone to the trailer at 392 San Marcus Drive. | [Declaration of Munoz, ¶5; Robinson, ¶4, ¶6; Cunningham, ¶4; Boersma, ¶4-¶5.] | Disputed. The full broadcast the dispatcher made was: "I have a call for you. Respond with fire. Originally an elderly neighbor stating that a male subject needed an ambulance. Something's not right with him. She stated that he came inside her unit, and choked her, and then went back into his unit. This is going to be at 395 San Marcos for the original victim X and the responsible inside of 392. And we're going to have fire and ambulance staged."<br><br>Boersman Depo p. 20. |
| 4.   The dispatcher announced that medical providers would be dispatched to the scene and "staged," meaning that the medical providers would wait nearby until the police officers had determined that it was safe for medical providers to enter the scene. | [Declaration of Munoz, ¶5; Robinson, ¶4, ¶5; Cunningham, ¶4, ¶5; Boersma, ¶4-¶6.] | Undisputed. |

| UNDISPUTED FACT | SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSE |
|---|---|---|
| 5. Upon arrival on scene, Defendants Robinson and Boersma were approached by an individual who reported that the suspect was "crazy", high on drugs, and had just attacked a woman across the street, at 395 San Marcus Drive. | [Declaration of Robinson, ¶8; Boersma, ¶7.] | Disputed. The unidentified civilian that the Defendant Officers failed to identify or formally interview only informed that Mr. White appeared to be high on drugs and acting crazy. He did not inform about any attack.<br><br>Boersma Depo 30-31; Robinson Depo 56. |
| 6. Officers spoke to the reporting party victim, later identified as Ms. Claros at 395 San Marcus Drive. Ms. Claros told officers that the suspect had come on to her property, grabbed her by her neck and choked her, and then threw her to the ground, and then went back to 392 San Marcus Drive. | [Declaration of Robinson, ¶9; Cunningham, ¶7; Boersma, ¶8-9.] | Disputed. Ms. Claros testified that she stood on her porch attempting to unlock her door when she felt an arm around her throat, she was able to get free and Mr. White ran off her porch and into a nearby trailer. She does not testify to being pushed up against the side of her trailer or being thrown to the ground.<br><br>Claros Depo 18-20. |
| 7. Ms. Claros reported that the attack was unprovoked, and that her attacker looked crazy, and that he may be high on drugs. | [Declaration of Boersma, ¶9.] | Undisputed. |
| 8. Officers then spoke to a woman at 392 San Marcus Drive, later identified as Ms. Villasenor. She told officers that the suspect was Michael White, was a temporary guest at her home at 392 San Marcus Drive, that he was on parole, he was taking drugs and acting crazy, and had just attacked Ms. Villasenor's neighbor. She reported that Mr. White had just pushed her, and that she fled her home in fear of Mr. White, and that she wanted Mr. White removed. | [Declaration of Robinson, ¶10-¶11; Boersma, ¶10; Cunningham, ¶8.] | Disputed. No one else observed Mr. White choke Ms. Claros.<br><br>Claros Depo 27-28. |

| UNDISPUTED FACT | SUPPORTING EVIDENCE | **PLAINTIFF'S RESPONSE** |
|---|---|---|
| 9. Decedent Michael White was on parole on the date of the incident which is the subject of this lawsuit. | [Declaration of Schulte.] | Undisputed. |
| 10. Sgt. Robinson and Officer Cunningham entered the bedroom adjoining the bathroom where Mr. White was located. The bedroom was small and cluttered. | [Declaration of Munoz, ¶8; Cunningham, ¶9; Boersma, ¶12; Robinson, ¶12, ¶16] | Undisputed. |
| 11. For several minutes, Sgt. Robinson and Officer Cunningham, and then Cpl. Boersma and Officer Munoz, identified themselves as police officers and attempted to persuade Mr. White to come out of the bathroom, but he refused to come out or talk to the officers. | [Declaration of Munoz, ¶7; Robinson, ¶12-¶14; Boersma, ¶11; Cunningham, ¶9, ¶10.] | Disputed. Boersma testified that the officers developed a plan merely to talk Mr. White out of the bathroom and that it took a minute to develop this plan. Boersma 39.<br><br>Cunningham testified that Ms. Villasenor let the officers into her trailer and that she informed Mr. White that the police were there and that she attempted to push the bathroom door open immediately. Cunningham Depo 60. |
| 12. The officers were concerned that Mr. White, who had a recent history of assaultive behavior, and was reportedly irrational and possibly on drugs, and was uncooperative, was concealed behind the door and in a bathroom, which the officers knew from training and experience often contain objects which could be used as weapons. | [Declaration of Munoz, ¶9, ¶13; Robinson, ¶13, ¶17; Cunningham, ¶9, ¶11; Boersma, ¶13.] | These are self-serving after-the-fact claims of the Defendants not facts. |

| UNDISPUTED FACT | SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSE |
|---|---|---|
| 13. Officers pushed in the bathroom door, and saw that Mr. White was a large, shirtless and sweating. Mr. White actively and repeatedly pushed back on the door to prevent the officers from seeing Mr. White and his surroundings, and from entering the bathroom. | [Declaration of Munoz, ¶12; Robinson, ¶15, ¶16; Cunningham, ¶13; Boersma, ¶13, ¶17.] | Undisputed. |
| 14. While the officers were trying to push the door open, Cpl. Boersma saw Mr. White put a baggie, containing a white substance Boersma believed to be drugs, to his mouth. Boersma told the other officers that he believed Mr. White was attempting to eat drugs. | [Declaration of Boersma, ¶14-¶16; Cunningham, ¶12; Munoz, ¶16; Robinson, ¶18.] | Disputed. Boersma testified to seeing Mr. White actively ingesting a plastic bag containing a golf ball size chunk of drugs. However, no golfball sized chunk of drugs was ever recovered from the scene, and the paramedics and coroner never found any plastic or obstructions in Mr. White's mouth, and his blood did not reveal recent ingestion of drugs. Spitz Depo 28-29 and Rule 26 Report. |
| 15. Cpl. Boersma and Officer Cunningham told Mr. White that he should just put down the drugs and come out to talk to the officers. Mr. White refused to comply. Officers then ordered Mr. White to get on the floor, but Mr. White refused to comply, instead continuing to push hard on the door to keep the officers out. | [Declaration of Boersma, ¶19; Cunningham, ¶12.] | Disputed. The Defendant Officers did not testify to ordering Mr. White to get on the ground. Boersma Depo 40-45. |
| 16. At one point, the pushing back and forth on the door between Mr. White and the Officers caused the door to come off its hinges. Mr. White held onto the door had continued to use it to prevent the officers from entering the bathroom. | [Declaration of Munoz, ¶11; Robinson, ¶19; Cunningham, ¶13; Boersma, ¶18.] | Undisputed. |

| UNDISPUTED FACT | SUPPORTING EVIDENCE | **PLAINTIFF'S RESPONSE** |
|---|---|---|
| 17.    The officers were fearful of Mr. White's intention because of his recent violence, his refusal to talk to the officers or comply with instructions, his concealment and the inability to see into the bathroom, and his size and deranged state. | [Declaration of Boersma, ¶13, ¶17-¶18, ¶21; Cunningham, ¶9, ¶11, ¶12; Munoz, ¶7, ¶8, ¶12, ¶13; Robinson, ¶16, ¶17, ¶18.] | These are self-serving statements of the Defendant Officers subjective intentions, not facts. |
| 18.    Mr. White was displaying unnaturally great strength in resisting the officers' attempts to push into the bathroom, and he refused to comply with repeated orders to get onto the ground. | [Declaration of Cunningham, ¶13, ¶19; Boersma, ¶19, ¶21; Munoz, ¶12, ¶15, ¶28.] | Undisputed. |
| 19.    Officer Munoz deployed his taser in dart mode, aimed at Mr. White's stomach area. The taser application had little to no effect on Mr. White and Mr. White continued to struggle and resist the officer's attempts to control Mr. White. After the door was removed, Officer Munoz cycled his taser again three more times, each time when Mr. White charged at the doorway where the officers were standing. Again, the taser had little to no effect. | [Declaration of Munoz, ¶13, ¶14, ¶17; Cunningham, ¶13; Boersma, ¶20-21.] | Disputed. Mr. White screamed and backed up after Defendant Munoz's taser applications.

Boersma Depo 57. |
| 20.    Officer Cunningham also deployed his taser, in dart mode, three times after Munoz. Again, the taser failed to get Mr. White to stop resisting the officers. | [Declaration of Cunningham, ¶14.] | Disputed. After Cunningham's taser applications, Defendant Boersma was able to push the door and Mr. White crumpled to the ground.

Boersma Depo 59-60. |

| UNDISPUTED FACT | SUPPORTING EVIDENCE | **PLAINTIFF'S RESPONSE** |
|---|---|---|
| 21. Once officers were able to enter the small, cluttered bathroom, they attempted to handcuff Mr. White. Mr. White actively struggled against being handcuffed, including, elbowing and kicking at the officers. | [Declaration of Cunningham, ¶15, ¶16; Munoz, ¶19, ¶20; Boersma, ¶22-¶23; Robinson, ¶21.] | Undisputed. |
| 22. Officer Munoz punched Mr. White on Mr. White's right side three times in order to get Mr. White to stop resisting being handcuffed. After the third strike, Mr. White stopped resisting handcuffing with his right arm, but otherwise continued struggling against the officers. | [Declaration of Munoz, ¶19; Boersma, ¶24.] | Undisputed. |
| 23. Cpl. Boersma then attempted to place a lateral vascular carotid restraint hold on Mr. White. This involved placing an arm to apply pressure to the sides of Mr. White's neck, but Mr. White resisted this maneuver too. | [Declaration of Boersma, ¶24; Robinson, ¶22; Cunningham, ¶16.] | Undisputed. |
| 24. After 30 seconds or less, Mr. White stopped struggling, although he did not go completely limp, and officers were able to handcuff him. | [Declaration of Boersma, ¶27.] | Undisputed. |
| 25. The staging medical personnel were immediately summoned once Mr. White was handcuffed, and one officer massaged Mr. White's jaw because Mr. White was clenching his teeth, while another officer went to retrieve a CPR mask. | [Declaration of Boersma, ¶28; Cunningham, ¶17, ¶18; Munoz, ¶21; Robinson, ¶23.] | Undisputed. |

| UNDISPUTED FACT | SUPPORTING EVIDENCE | **PLAINTIFF'S RESPONSE** |
|---|---|---|
| 26. When medical personnel arrived shortly after being called for by the officers, Mr. White kicked them and screamed at them so that they could not provide care. | [Declaration of Munoz, ¶22; Robinson, ¶23; Cunningham, ¶18; Boersma, ¶30-31.] | Undisputed. |
| 27. Officer Koutnik saw the handcuffed Mr. White kicking the medics and another officer, so Koutnik grabbed one of Mr. White's legs. Mr. White continued to roll around yelling and kicking at the officers. | [Declaration of Koutnik, ¶7-¶9; Munoz, ¶22; Cunningham, ¶18; Boersma, ¶29.] | Undisputed. |
| 28. Munoz briefly put his knee on Mr. White's back to keep him from rolling around while Cunningham applied a restraint (known as a hobble) around Mr. White's legs to keep Mr. White from kicking officers and medics, which was preventing Mr. White from getting medical attention. | [Declaration of Munoz, ¶23.] | Disputed. Sergeant Robinson also kneeled on Mr. Whites legs to allow the other officers to place the hobble restraints on him.<br><br>Robinson Depo 84-85. |
| 29. Mr. White was then carried outside and placed on a gurney, which would not fit in the cluttered trailer, and medics began working on him. | [Declaration of Munoz, ¶25; Koutnik, ¶6, ¶10-¶11; Robinson, ¶25.] | Undisputed. |
| 30. None of the defendant officers on scene recognized Mr. White at the time of this incident. | [Declaration of Munoz, ¶26; Koutnik, ¶15; Robinson, ¶26; Cunningham, ¶19; Boersma, ¶10.] | Undisputed. |

| UNDISPUTED FACT | SUPPORTING EVIDENCE | **PLAINTIFF'S RESPONSE** |
|---|---|---|
| 31.    At no time during this encounter did Mr. White cooperate in any request that he come out of the bathroom to talk to the officers, that he get on the ground in the bathroom, that he be handcuffed, or that he stop kicking officers and medics. | [Declaration of Munoz, ¶24, ¶28; Koutnik, ¶34; Robinson, ¶29; Cunningham, ¶19; Boersma, ¶34.] | Undisputed. |
| 32.    Plaintiff's retained medical expert claims that Mr. White died of asphyxiation as a result of the carotid restraint, the strikes the expert presumes were to Mr. White's body, and the knee applied to Mr. White's back in order to apply the hobble restraint. | [Declaration of Conley, Exhibit H (Spitz deposition p. 48:17-50:23.)] | Disputed. Dr. Spitz also opined that the Taser applications contributed to acidosis which results in arrhythmias of the heart beat and cardiac arrest and White arrived at the hospital in cardiac arrest. Dr. Spitz Rule 26 Report p. 5. |
| 33.    Plaintiff claims that the officers on scene violated Plaintiff's rights by using unreasonable force by restraining and tasering Mr. White. | [Declaration of Conley, Exhibit A-E, (Plaintiff's responses to Officer Defendant Interrogatory Number 1, p. 3.)] | Undisputed. |
| 34.    Plaintiff claims, "based upon information and belief," that Defendant Robert Nichelini, former Chief of the Vallejo Police Department, failed to train officers in proper use of tasers. | [Declaration of Conley, Exhibit F, (Plaintiff's response to Nichelini Interrogatory Number 1, p. 3-4.)] | Undisputed. |
| 35.    All of the officers on scene had received all required POST police officer training as of the date of the incident. | [Declaration of Conley, Exhibit G (Clark deposition, p.50:16-18) Declaration of Munoz, ¶3; Koutnik, ¶3; Robinson, ¶3; Cunningham, ¶3; Boersma, ¶3.] | Undisputed. |

| UNDISPUTED FACT | SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSE |
|---|---|---|
| 36. Plaintiff's retained police practices expert agrees that the Defendant officers acted properly in staging medical personnel, questioning witnesses on the scene, and attempting to talk Mr. White out of the bathroom. | [Declaration of Conley, Exhibit G (Clark deposition p. 18:10-20:11, 21:15-22.)] | Undisputed. |
| 37. Mr. White had no signs of significant traumatic injury after this incident. | [Declaration of Conley, Exhibit H (Spitz deposition, p. 38:23-39:5); Exhibit I (Coroner's Report p.000159.)] | Disputed. Mr. White was non-responsive, unable to breathe and unable to be revived, and died shortly after this incident. Dr. Spitz testified that the type of indicators Defendants asked about would not occur in a situation as this where the brain deprived of oxygen for a period of minutes. Dr. Spitz Depo 36-39. |
| 38. The City of Vallejo has provided all of the named defendants with a defense in this action, without reservation of rights, as required by Government Code sections 825 and 995. | [Declaration of Quintana, ¶3.] | Undisputed. |
| 39. Plaintiff has alleged, and Defendants have admitted, that each of the defendants was acting within the course and scope of the defendants' employment with the City of Vallejo. | [First Amended Complaint, Paragraphs 5-10, Answer Paragraphs 5-10] | Undisputed. |
| 40. No actual or specific conflict of interest has arisen between the City of Vallejo and any of the named defendants, and the City has made no reservation of rights on its duty to defend and indemnify under Government Code section 825(a). | [Declaration of Quintana, ¶4.] | Undisputed. |

| UNDISPUTED FACT | SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSE |
|---|---|---|
| 41. All of the named defendants have cooperated in the defense of this action which has been provided by the City of Vallejo. | [Declaration of Quintana, ¶5.] | Undisputed. |
| 42. At no time during this encounter did Mr. White state that he was in pain or that he was having trouble breathing. | [Declaration of Munoz, ¶27; Koutnik, ¶36; Robinson, ¶27; Cunningham, ¶21; Boersma, ¶36.] | Undisputed. |

Dated:  April 14, 2016                    **THE LAW OFFICES OF JOHN L. BURRIS**


                                          /s/ *Benjamin Nisenbaum*
                                          Benjamin Nisenbaum
                                          Attorney for Plaintiffs