CLAUDIA M. QUINTANA
City Attorney, SBN 178613
By: FRANK A. SPLENDORIO
Deputy City Attorney, SBN 272601
CITY OF VALLEJO, City Hall
555 Santa Clara Street, P.O. Box 3068
Vallejo, CA 94590
Telephone: (707) 648-4545  Fax: (707) 648-4687
Email: frank.splendorio@cityofvallejo.net

A. BYRNE CONLEY, ESQ. SBN 112715
SEAN C. CONLEY, ESQ. SBN 130814
GIBBONS & CONLEY
2185 North California Boulevard, Suite 285
Walnut Creek, CA 94596
Telephone: (925) 932-3600  Fax: (925) 932-1623

Attorneys for Defendants BARRY BOERSMA, HERMAN ROBINSON, JOHN CUNNINGHAM, MIKE KOUTNIK, RAUL MUNOZ, and ROBERT NICHELINI

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| V.W., a minor, by and through her Guardian Ad Litem, Tanaya Barber, Individually and as Successor in Interest of Decedent MICHAEL WHITE,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT NICHELINI, et al.<br><br>Defendants. | CASE NO. 2:12-cv-01629-MCE-AC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTION**<br><br>Date:  May 19, 2016<br>Time:  2:00 p.m.<br>Place:  Courtroom 7 |

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623

DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTION       CASE NO. 2:12-cv-01629-MCE-AC

# TABLE OF CONTENTS

| | Page |
|---|---|
| THERE ARE NO MATERIAL DISPUTES OF FACT | 1 |
| A. Statement of Undisputed Facts | 1 |
| B. Factual Disputes Claimed By Plaintiff | 2 |
| C. Opposition Statement of Facts | 4 |
| LEGAL ARGUMENTS | 6 |
| The Claims Against the Defendants Should be Dismissed Because of the Vallejo Bankruptcy | 6 |
| The Defendant Officers Used Proper Force and are Entitled to Summary Judgment | 7 |
| Chief Nicholini is Entitled to Summary Judgment, and Qualified Immunity | 12 |
| The Defendants are Entitled to Summary Judgment on the Claims by the Plaintiff, on Her Own Behalf, for Loss of Familial Relationship Under the 14th Amendment | 13 |
| Defendants are Entitled to Summary Judgment on the Civil Code §52.1 Claim | 14 |
| Defendants are Entitled to Summary Judgment on the Negligence and Assault and Battery Claims | 14 |
| Plaintiff is Entitled to Summary Judgment on the Request for Declaratory and Injunctive Relief | 14 |
| Defendants are Entitled to Summary Judgment on the Request for Punitive Damages | 15 |

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

i

DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTION

CASE NO. 2:12-cv-01629-MCE-AC

# THERE ARE NO MATERIAL DISPUTES OF FACT

### A. Statement of Undisputed Facts

Plaintiff's opposition to Defendants' statement of undisputed facts effectively leaves undisputed all of the major facts upon which Defendants base their motion. It is undisputed that the Officers were advised that Decedent, Mr. White, had attacked an elderly woman. While medical professionals staged nearby, the officers went to the site to investigate and clear the scene before the medical professionals could safely be brought in. The officers were told by the victim, Ms. Claros, that decedent, Mr. White, attacked her. They learned that he had also attacked Ms. Claros' neighbor, Ms. Villasenor, who wanted the officers to remove him from her house, and that he was on parole. They were told that Mr. White was high on drugs and was acting crazy and violent. They found Mr. White in the bathroom of Ms. Villasenor's house, and they tried to talk him out. Mr. White refused to cooperate.

The officers had an undisputed right as well as an immediate need to take Mr. White into custody. The officers attempted to open the door to observe Mr. White, as the officers were fearful of what he was doing in the bathroom while refusing to come out or even talk to the officers. An officer saw Mr. White apparently attempting to eat a baggie of drugs, and repeated this to the other officers. Eventually, a pushing and pulling match at the door ensued and Mr. White showed superhuman strength, beyond even that apparent from his obvious physical size. Because of the limited space and the inability to get by the door, which Mr. White used as a shield even after it was torn off of its hinges, one of the officers used a taser on Mr. White, but it proved ineffective at stopping Mr. White. Another officer then tried to use his taser, but again Mr. White fought through it and continued to resist the officers' attempt to gain control of him.

Eventually, some officers were able to get by the bathroom door and Mr. White fought vigorously against being handcuffed, including hitting the officers. One of the officers struck Mr. White three times, which eventually resulted in Mr. White allowing one of his arms to be handcuffed. Even then, Mr. White continued to fight, and another officer attempted to apply a carotid restraint. Eventually, Mr. White stopped resisting and was handcuffed.

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

1

DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTION        2:12-cv-01629-MCE-AC

Once he was handcuffed, medical help was immediately summoned and he was moved to the next room. Mr. White, however, chose to scream and kick the officers and the paramedics who came in to try to assess his medical condition. At that point, since Mr. White was preventing his own medical treatment, officers placed a hobble on his legs. He was then carried outside onto a waiting gurney, where medical providers began working on him.

### B. Factual Disputes Claimed by Plaintiff

Plaintiff disputes a few of the undisputed facts, but provides no evidentiary support.

UF 3 indicates that the officers were told that a woman reported being choked by a man, who retreated to an adjacent property. Plaintiff disputes this by noting that the victim reported that her assailant needed an ambulance. That assertion does not contradict the report of an assault, which is the reason that the police were involved in this matter. The police were required to go to the scene to determine whether it was safe for the staging medical personnel to enter, a plan which even Plaintiff's own police practices expert considered to be appropriate. See UF 36.

UF 6 reports what the victim, Ms. Claros, told the officers. Plaintiff does not dispute what the officers were told, but rather cites a portion of Ms. Claros' deposition where she provides a summary description of the incident. At no point is she asked what she told the officers, nor does she contradict the undisputed fact that Mr. White attacked her.

UF 8 states that the neighbor, Ms. Villasenor, provided the officers with certain information, including the fact that Mr. White had just attacked Ms. Claros. Plaintiff disputes this by claiming that Ms. Villasenor did not witness the attack. In the cited testimony, Ms. Claros reports that she told Ms. Villasenor about the attack. Claros Depo. 28:6. That is not inconsistent with the officers' statements that Ms. Villasenor also told them about the attack. More importantly, the purported dispute does not change the undisputed fact that the Officers knew of Mr. White's attack on Ms. Claros.

UF 11 reports that the Officers identified themselves as police and attempted to persuade Mr. White to come out of the bathroom, but he refused to comply. Plaintiff notes that Cpl. Boersma testified that the officers discussed the plan to talk Mr. White out. That testimony is not

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

inconsistent. Plaintiff asserts that Officer Cunningham testified that Ms. Villasenor first attempted to talk Mr. White out of the bathroom; in fact, the testimony cited is a statement being read to Officer Cunningham, which he does not adopt. Further, whether or not Ms. Villasenor first attempted to talk Mr. White out of the bathroom does not contradict the fact that the officers attempted to do so.

Both UF 12 and UF 17 describe the officers' concern about Mr. White's irrational and violent behavior. Plaintiff offers no contradictory evidence, but simply asserts that the officers' state of mind is not a fact, despite the 14th Amendment (purpose to harm) and punitive damages (malice) allegations.

UF 14 reports that Cpl. Boersma saw Mr. White put a baggie of some white substance, which Cpl. Boersma believed to be drugs, to Mr. White's mouth, and that Boersma advised the other Officers that be believed that Mr. White was attempting to eat the drugs. Plaintiff claims that no baggie of drugs was recovered from the scene, but offers no evidence to support that claim. See Objections to Evidence. Plaintiff also asserts that no drugs were found in Mr. White's mouth by paramedics or the coroner, but again offers no evidence of such findings. Instead, Plaintiff offers only testimony of a medical expert about the estimated time of cocaine consumption. The fact that Mr. White did not ultimately break the baggie open and swallow the drugs does not change the operative facts of what information the officers on scene had at the time of this incident. The only competent evidence is that an officer saw Mr. White put a baggie of what appeared to be drugs to his mouth, and reported this observation to the other officers, all of whom became concerned by this turn of events.

UF 15 reports that the officers tried to get Mr. White to put down the drugs and surrender but he refused to do so, and continued to push hard at the door to keep them out of the bathroom. Plaintiff disputes whether Mr. White was ordered to get on the ground based upon testimony about what occurred *before* Mr. White was first seen with drugs. Boersma Depo 45:12-13. Since the cited testimony does not discuss the period of time in question, it does not contradict the UF.

UF 19 reports that Officer Munoz deployed his taser, but it had little to no effect on Mr. White, who continued to struggle and resist the officers. Plaintiff disputes this based upon a

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623

3

DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTION    2:12-cv-01629-MCE-AC

report that Mr. White screamed and "backed up" after a taser application. The cited testimony actually reports that Mr. White screamed and backed up, but continued to actively push against the door and resist the officers' attempts to enter. Boersma Depo 57:15-17.

UF 20 reports that Officer Cunningham's taser use also did not get Mr. White to cooperate. The testimony offered to dispute this fact is a statement by another of the officers indicating that he could not determine why the officers were eventually able to get past Mr. White's blockade. Boersma Depo 59:19-23. "I don't know" is not a positive assertion of fact and does not contradict the UF.

UF 28 reports that certain officers held Mr. White down in order to apply the hobble. Plaintiff disputes this fact by claiming that Sgt. Robinson also "kneeled on" Mr. White's legs. However, the testimony cited actually reports that "somebody" kneeled on Mr. White's legs but Sgt. Robinson cannot recall who. Robinson Depo. 84:22-85:2. No evidence indicates Sgt. Robinson even touched Mr. White.

UF 32 reports the Plaintiff's retained expert's testimony about the cause of Mr. White's death. Plaintiff apparently seeks to impeach her own expert. The deposition testimony is entirely explicit about the three specified actions causing (in Dr. Spitz's mind) Mr. White's death.

UF 37 states the observation, in the coronor's report and confirmed by Plaintiff's medical expert, that Mr. White had no signs of focal trauma after the incident. Plaintiff disputes this by citation to the very testimony which supports the UF.

Since Plaintiff does not provide supporting evidence to sustain any dispute, the Court may treat this motion as based upon undisputed facts as set forth in the Defendants' moving papers.

**C. Opposition Statement of Facts**

Plaintiff does not offer any additional "undisputed facts" to those enumerated in the moving papers. However, in Plaintiff's statement of facts in Plaintiff's Opposition Brief, Plaintiff injects some additional claims.

Plaintiff describes some testimony by the victim, Ms. Claros, about things that occurred before the officers arrived on scene. Plaintiff's Opposition (Opp.) 1:18-25. While certainly confirming the fact that Mr. White had, without provocation, violently attacked Ms. Claros, the

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

4

DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTION      2:12-cv-01629-MCE-AC

issue before the Court is what the officers knew, and therefore Ms. Claros' attitude towards the attack before calling the police is irrelevant.

Plaintiff next notes that some, but not all, of the officers misunderstood the dispatch call to be a request for medical care for the victim. *Id* at 2:1-9. Although Plaintiff tries to elevate this to some level of significance, it is of no consequence whatsoever to the issues in this case. The officers understood that there was a combined call of an assault and battery along with a request for medical help, with medical services being staged while the officers investigated the scene. In fact, the officers did such an investigation, and did ultimately recognize that Mr. White needed to be taken into custody and also would need medical care, and approached him to attempt to get his cooperation while he was holed up in the bathroom. Mr. White himself prevented bringing in such medical care. Even Plaintiff's own expert acknowledged that the officers' approach to the scene was proper. UF 36. Once it appeared Mr. White was trying to eat a baggie of drugs, the situation escalated. UF 14-23. So, whatever confusion some of the officers may have had about the original dispatch call, their approach was proper and they used only the force necessary to try to control Mr. White.

Plaintiff also asserts facts which are not supported by the record. Plaintiff claims that Officer Boersma applied pressure to Mr. White's carotid arteries for approximately 30 seconds. Opp. 3:9-10. The actual testimony by Cpt. Boersma is that he attempted the carotid hold, possibly unsuccessfully (Boersma Depo. 66:8), for less than 30 seconds. *Id* at 67:10-11. Plaintiff asserts that Officer Munoz punched White three times, causing White "to go limp." Opp. 3:10-12. Actually, Officer Munoz stated that after the third punch, Mr. White's right *arm* went limp. Munoz Depo 72:16. Plaintiff also claims that officers dragged Mr. White into the hallway, offering absolutely no evidence to support that claim. Opp. 3:12.

Plaintiff describes Mr. White as kicking and thrashing and states that the officers left Mr. White on the floor to kick and thrash "for a few minutes." Opp. 3:18-20. The testimony cited (Boersma 73-74) actually describes that the officers allowed Mr. White to kick (even at officers passing by) until the paramedics arrived. It is telling that Plaintiff's recitation of facts omits the crucial detail that this hobbling was employed not because of continued attacks on the Officers,

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623

5

DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTION        2:12-cv-01629-MCE-AC

but because Mr. White's kicking was actively preventing Mr. White from obtaining the medical care that Plaintiff argues was so urgently needed.

Plaintiff asserts that Mr. White was restrained and "combatted with" for 24 minutes. Opp. 4:1. In fact, the 24 minutes, as described by Dr. Spitz, appears to be nothing more than a calculation of the officers' entire time on the scene, and appears to include some unspecified period of time in which there was no contact between the officers and Mr. White whatsoever.

Plaintiff also offers opinions of an "expert witness" amounting to conclusions about whether use of force is "grossly unjustified, excessive, and unnecessary," (Opp 4:19) and whether certain weapons "should" be used or not (*id.* at 4:25-27), all of which are improper. See Objection to Evidence.

## LEGAL ARGUMENTS

### The Claims Against the Defendants Should be Dismissed Because of the Vallejo Bankruptcy

The issue before the Court is whether these claims against these officers constitute a "claim" against the City of Vallejo, under the Bankruptcy Code, as a consequence of the City's statutory obligation to defend and indemnify the officers. Plaintiff's first response is that, with respect to the civil rights claims at least, there is no *respondeat superior* liability under section 1983. Opp. 6:25-7:14. That argument, of course, misses the point. The question is not whether Plaintiff has a right to make a claim against the officers under section 1983, but whether such claim constitutes a "claim" against the City under bankruptcy law.

Instead of responding to the Bankruptcy Code issues, Plaintiff instead observes that the obligation to defend and indemnify does not make the City the "real party in interest" for purposes of sovereign immunity claims. Opp. 7:15-8:5. But this is not an issue of sovereign immunity. In fact, Plaintiff is not being told that she has no redress for the alleged injuries, but rather that Plaintiff must seek those recoveries, like all creditors, through the bankruptcy proceeding. Since there is no issue being raised about sovereign immunity, and its consequent bar to any litigation in any forum, the policy considerations going into the sovereign immunity cases simply have no application to issues of what constitutes a claim under bankruptcy law.

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623

**The Defendant Officers Used Proper Force and are Entitled to Summary Judgment**

Plaintiff apparently concedes that the officers had a right to seize Mr. White. There is no dispute that he was on parole, so no probable cause was needed to seize him. UF 9. There is no dispute that Mr. White assaulted and battered two people, was grossly intoxicated on drugs, was trespassing, and resisted arrest. There is also no dispute that, based upon his behavior, the officers were entitled to seize him as a danger to himself and others. Welfare & Institutions Code §5150.

Plaintiff's Opposition does not address the Fourth Amendment claim by individual Defendant, instead indifferently lumping separate actions together. In particular, Plaintiff does not specifically address Officer Koutnik. Officer Koutnik arrived after Mr. White had been handcuffed, and observed him kicking officers and medics, preventing them from providing Mr. White with any medical attention. UF 27. Officer Koutnik's sole act was to grab one of Mr. White's legs so that a hobble restraint could be placed on his legs. *Ibid*.

Plaintiff addresses the issue of the "nature and quality of the intrusion" by misrepresenting several of the facts involved in the confrontation. Opp. 9-10. Plaintiff claims that Mr. White was struck on the ribs, but the record only indicates that he was struck on the "right side." UF22. Plaintiff asserts that Mr. White was subjected to some kind of "compressive force" at some time other than when he was being hobbled, but there is no evidence that this ever happened. Opp. 9:25. Plaintiff asserts that Mr. White was "hogtied" but there is no evidence of hogtying, only hobbling. UF28.

"The right to make an arrest carries with it the right to employ some level of force to effect it." *Bryan v. MacPherson* (9th Cir. 2010) 630 F.3d 805, 818. Thus, a "court must consider that the officer may be reacting to a dynamic and evolving situation, requiring the officer to make split-second decisions." *Id*. "[A]n officer need not have perfect judgment, nor must he resort only to the least amount of force necessary to accomplish legitimate law enforcement objectives." *Id*.

Plaintiff first describes impact blows "by punching or kicking" as "significant force." There is no evidence of any kicking except by Mr. White himself. Plaintiff cites the *Blankenhorn* decision, which held that punching a passive suspect for no reason whatsoever could be

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

considered unreasonable. *Blankenhorn v. Orange* (9th Cir. 2007) 485 F.3d 463, 480. By the time Officer Munoz punched Mr. White, Mr. White had already actively resisted by pushing the door against the officers and punching the Officers and tucking his arm in to prevent handcuffing. UF 18, 21. Plaintiff also suggests that the Court has held that punching or kicking could create a substantial risk of death, but cites a taser case. *Bryan, supra,* 630 F.3d at 825. Nothing in the case law or facts here suggest that the strikes were particularly dangerous, or severe, or unjustified by the circumstances.

Plaintiff argues that handcuffing could constitute excessive force, but does not suggest how it would be in the present circumstances, involving a violent individual in a drug induced psychotic state, who is actively and violently resisting officers, and is preventing his own medical treatment. The *LanLonde* case cited by Plaintiff involved excessively tightened handcuffs along with failure to treat the effects of pepper spray. Plaintiff next argues that use of body weight to restrain someone could, under the right circumstances, amount to deadly force. However, the circumstances in the *Drummond* case involved claims that "two officers continued to press their weight on [Plaintiff's] neck and torso as he lay handcuffed on the ground and begged for air." *Drummond v. Anaheim* (9th Cir. 2003) 343 F.3d 1052, 1056. In the present case, one officer briefly put a knee on Mr. White's back so that a hobble restraint could be applied so that Mr. White could obtain medical attention. UF 28. The weight was placed only as briefly as possible in order to accomplish the hobbling, and was removed immediately once the hobble was applied, and used no more force than was necessary to keep Mr. White from moving. Munoz Decl. ¶23. Mr. White showed no signs of traumatic injury from that action. UF 37. At no time did Mr. White state that he was in pain or having any trouble breathing. UF 42.

Finally, with respect to tasers, the *Bryan* case, decided after this incident, set a precedent by holding that tasers were an "intermediate" use of force, establishing for the first time that tasers should not be used on unthreatening and unarmed suspects stopped for minor infractions. See *Velarde v. Union City Police Department* (S.D. Cal. 2015) 2015 WL 6871579 at *4.

What is clear from all of this is that the officers on scene had an undisputed right to seize Mr. White, and were legally entitled to use force to do so. The officers' attempted verbal

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

8

1  persuasion and direction to no avail, turning to different types of non-lethal force as each prior
2  attempt failed. The use of force was minimal, despite the unexpected result.

3      Plaintiff next turns to the governmental interest in the use of force. Opp. pp. 10-13.
4  Plaintiff completely ignores Mr. White's immediate history of wild, violent behavior, including
5  assaults on two women. Ms. Claros' attitude, which was never conveyed to the police, is
6  irrelevant. Mr. White did, in fact, commit the assaults and batteries regardless of Ms. Claros'
7  feelings about it. Whatever Mr. White's need for medical help, it was only Mr. White himself
8  who prevented him from getting it.

9      The officers had a right, and an interest, in seizing Mr. White because of his criminal acts,
10 his danger to himself and others, and his need to be medically treated. The officers could not
11 establish whether Mr. White was armed, because Mr. White prevented the officers from seeing
12 into the bathroom. The police had no reason to believe that Mr. White intended to cooperate,
13 given his history. The officers justifiably feared for their own safety. UF 12. Once Mr. White
14 appeared to be eating drugs, and given his drug induced superhuman strength, and his resistance
15 to each successive attempted use of force, it was appropriate for the officers to attempt alternate
16 means of gaining control.

17     Plaintiff argues that the officers did not consider Mr. White's mental state, but ignores that
18 they were aware that his mental state was one of violent agitation and behavior. How officers
19 should approach someone with no history of violence or resistance (see *Deorle v. Rutherford* (9th
20 Cir 2001) 272 F.3d 1272) is irrelevant to the facts of this case. It has never been clearly
21 established that officers need to take a passive, non-interventional approach to a violent parolee
22 merely because his criminal behavior is secondary to self-induced cocaine psychosis.

23     Plaintiff also relies upon a bald, unsupported denial of the fact that Mr. White was seen
24 attempting to consume drugs. See Objections to Evidence. The officers were only required to
25 avoid unreasonable force under the known circumstances. *Garlick,* cited by Plaintiff on this issue,
26 involved a non-violent misdemeanor suspect against whom lethal force was applied, as well as
27 repeated baton blows to the head, and eight to ten minutes of full body weight to the suspect's
28 back, and hogtying, none of which are present in the case now before the Court.

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623

Plaintiff attempts to impute each of the officer's acts to the other officers. Opp. 13-14. Plaintiff returns to the canard about Sgt. Robinson kneeling on Mr. White, which never happened. Robinson Depo. 85:5. Robinson never saw anybody kneel on Mr. White's back. *Id* at 85:12. Plaintiff then returns to the dead-end argument about whether Sgt. Robinson or the other officers properly heard the dispatcher, discussed above. Plaintiff has failed to indicate how Sgt. Robinson in particular, as well as other officers, were "integral participants" in any other specific act.

Again conspicuously absent is any discussion about Officer Koutnik. UF 27. Obviously, Officer Koutnik had no participation in any of the earlier activities, and it was clearly proper to hobble Mr. White's legs so that medical attention could be provided.

Cases cited by Plaintiff do not support her arguments. *Hopkins v. Bonvicino* (9th Cir. 2009) 573 F.3d 752, at 770, holds that an armed officer who stands at the door with a gun while other officers conduct an unconstitutional search may be considered a participant in that illegal search. No improper search is at issue in the present case. In *Boyd v. Benton County* (9th Cir. 2004) 374 F.3d 773, at 780, the Court found integral participation where an officer impermissibly threw a "flash-bang" device into an occupied home, where all of the officers were active, knowing participants who affirmatively agreed to its use. Here, the officers entered the residence with the plan of talking Mr. White out of the bathroom, but had to improvise when Mr. White became aggressive at the door and then appeared to be consuming more drugs. None of the officers had an opportunity to discuss and consent to anyone else's use of force under the dynamic circumstances presented. An officer who is a bystander or is simply part of a team that collectively caused a constitutional violation is not, on that basis alone, considered fundamentally involved. See *Chuman v. Wright* (9th Cir. 1996) 76 F.3d 292, 294-295; *Bravo v. Santa Maria* (9th Cir 2011) 665 F.3d 1076, 1089-90.

### **The Defendants Have Established a Right to Qualified Immunity**

Plaintiff offers a generic statement of general principles of qualified immunity, then indulges all of the errors the Supreme Court has recently tried to correct in *City and County of San Francisco v. Sheehan* (2015) 135 S.Ct. 1765. The Supreme Court, reversing a 9th Circuit denial of qualified immunity, reminded courts that

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

10

DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTION         2:12-cv-01629-MCE-AC

> An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it [citation], meaning that existing precedent … placed the statutory or constitutional question beyond debate. [Citation.] This exacting standard gives government officials breathing room to make reasonable but mistaken judgements by protect[ing] all but the plainly incompetent or those who knowingly violate the law.

*Id* at 1774 [internal quotation marks omitted]. The standard of reasonableness must consider the obligation of police to move quickly and decisively, and must allow "some mistakes" that might become apparent through hindsight. *Id* at 1775. The courts are also reminded not to define rights so broadly that qualified immunity becomes a mere illusion. "Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures." *Id* at 1776.

In particular, the *Sheehan* Court repudiates the same kind of overbroad reading of *Deorle* and other 9th Circuit cases, concerning the handling of "mentally disturbed" subjects, Plaintiff adopts. The *Deorle* decision concerned a suspect known to be unarmed, who had neither attacked nor touched someone, had generally obeyed the instructions given to him by various police officers, and had committed no serious offence. *Sheehan, supra,* 135 S.Ct. at 1776. The police had observed the suspect at close proximity for about five to ten minutes before firing a bean bag round at him. *Ibid.* The Supreme Court, sounding dubious about the *Deorle* Court's holding, concluded, "whatever the merits of the decision in *Deorle*, the differences between that case and the case before us leap from the page. Unlike *Deorle*, [the suspect] was dangerous, recalcitrant, law-breaking, and out of sight." *Ibid*. The Court went on to observe that a police entry which is otherwise constitutional is not rendered unreasonable merely because it provokes a violent reaction. *Id* at 1777. Nor could the officers' misjudging the situation, or employing bad tactics which ultimately result in a deadly confrontation, undercut qualified immunity. *Id* at 1777. Further, the Court observed that the opinion of Plaintiff's retained expert, that the officers did not follow training or best practices, does not constitute a basis for denying qualified immunity. *Id* at 1777-1778. Finally, the Court concluded that there is even now no legal consensus that officers' knowledge that a suspect has some mental disability or agitated state forecloses the officers from

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

taking reasonable steps to protect both themselves and the suspect. *Id* at 1778.

Plaintiff seeks to elevate the original call, reporting the assault and battery of an elderly woman and a request for medical aid for the suspect, as requiring officers to treat Mr. White as a purely innocent victim. It is not clearly established that officers must stand by while an agitated and drugged person, with a recent history of criminal violence, and on parole, continues to trespass on his second victim's property, refuses to speak to officers, and hides behind a door in a bathroom, which may contain any number of potential weapons. Furthermore, it was not clearly established that officers were not entitled to try to restrain someone who was actively fighting against the officers and appeared to be trying to consume even more drugs, simply because he appeared to be agitated. The qualified immunity standard Plaintiff proposes is that the officers clearly violated the 4th Amendment by doing something more than waiting and hoping that things would work themselves out on their own.

Plaintiff asserts that it was clearly established that "prolonged body-weight pressure" to a suspect's back is known to be capable of causing serious injury or death. Opp. 15:7. The only actual evidence is that there was a very brief application of weight to Mr. White's back, only long enough to restrain him from kicking the medics who were trying to treat him. UF 28. Plaintiff also claims that there is some "long-held-industry-wide understanding" of dangers inherent in the use of the carotid hold. Opp. 15:9. Plaintiff cites a dissenting opinion which talks about "chokeholds," not the carotid hold at issue in this case. UF 23; Boersma Decl. ¶25. The dissenting opinion reports that, if applied incorrectly, the "chokehold" could cause unintended injuries, such as crushing the suspect's larynx, trachea, or thyroid. Opp. 15:15-16. Again, there is no indication that there was any misapplication of the hold, and in fact, the undisputed facts are that there is no evidence of such traumatic injury. UF 37.

### Chief Nicholini is Entitled to Summary Judgment, and Qualified Immunity

Plaintiff offers no evidence concerning Chief Nicholini's actions which would justify any liability in this case. In particular, no evidence is offered about Chief Nicholini's supervisory activities or involvement in any training of any of the subject officers. Indeed, there is no actual evidence offered about any of the training received by any of these officers. Plaintiff argues that

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

12

DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTION     2:12-cv-01629-MCE-AC

the officers acted improperly, and therefore must have been trained improperly. Plaintiff only identified taser training as the basis for her claim. UF 34. Plaintiff admits that all of the officers received all required POST police officer training as of the date of this incident. UF 35. There is no evidence of improper training on tasers or anything else.

There is no evidence that the need for specific training was known to Chief Nicholini, that he deliberately chose not to give such training, that it was "plainly obvious" that such training was necessary, and that the specific missing or incorrect training actually caused, in fact, the present incident. Chief Nicholini is also entitled to qualified immunity. There is also no evidence of any other incidents to support a "supervision" claim, and no such claim is identified by Plaintiff in this case. Plaintiff has utterly failed to suggest any triable issue of material fact with respect to any element of Plaintiff's claim against Chief Nicholini.

**The Defendants are Entitled to Summary Judgment on the Claims by the Plaintiff, on Her Own Behalf, for Loss of Familial Relationship Under the 14th Amendment**

The above discussion about reasonableness under the 4th Amendment only applies to Plaintiff for her claim on behalf of the estate of Mr. White. Plaintiff's claim, as daughter of Mr. White, is subject to the 14th Amendment "shocks the conscience" standard. See Opp. 16:20-17:23. As discussed above, the officers acted reasonably, even under the more stringent 4th Amendment standard, and thus could not have violated the more exacting 14th Amendment standard.

Plaintiff argues that there was time to deliberate at the time the officers were approaching Mr. White. *Id* at 17:13-23. Even assuming deliberation was possible early on in the encounter, Mr. White himself escalated the situation to one in which deliberation was no longer available. Mr. White forced the officers into "fast action" and "repeated split second decisions." *Porter v. Osborn* (9th Cir. 2008) 546 F.3d 1131, 1139. In any event, Defendants' actions were proper under either standard.

Plaintiff does not even address the case law calling for Plaintiff to present evidence of ulterior motives in establishing a 14th Amendment claim. *Gonzalez v. Anaheim* (9th Cir. 2014) 747 F.3d 789, 797-798. It is undisputed that the officers did not recognize Mr. White. UF 30. There is

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA 94596
(925) 932-3600
Fax (925) 932-1623

simply no evidence of ulterior motive.

### Defendants are Entitled to Summary Judgment on the Civil Code §52.1 Claim

Plaintiff must show use of force separate from the force necessary to violate the 4th Amendment to make a claim under Civil Code section 52.1. *Lyall v. Los Angeles* (9th Cir. 2015) 807 F.3d 1178, 1196. Plaintiff contends that the *Lyall* decision is limited to cases involving detentions. Opp. 18:12. The *Lyall* decision itself makes no such distinction, and explicitly states that it applies to all "search and seizure" cases. The rational remains the same in any event; section 52.1 claims may not "merely duplicate [plaintiff's] section 1983 excessive force claims." *Lanier v. Fresno* (E.D. Cal. 2011) 2011 W.L. 149802, *5; *Ervin v. Los Angeles* (C.D. Cal. 2012) 2012 W.L. 4758224 *2, ("to the extent that an alleged violation of a right is inherently coercive, that coercion is insufficient to meet the statutory requirement of section 52.1, which requires a showing of an independent threat or coercive act").

### Defendants are Entitled to Summary Judgment on the Negligence and Assault and Battery Claims

Plaintiff adds no arguments beyond her failed 4th Amendment arguments. Plaintiff does not even attempt to address the issues of this claim with respect to retired Chief Nicholini. In particular, Plaintiff appears to concede that there is no evidence that Chief Nicholini "directed such acts or personally cooperated" in the alleged improper acts. Plaintiff also apparently concedes that the Chief has discretionary immunity in acting as a chief of police and setting policy within the Department. Gov't Code §820.2.

### Plaintiff is Entitled to Summary Judgment on the Request for Declaratory and Injunctive Relief

Plaintiff makes no serious argument that she is entitled to the requested relief. No policy maker is a party to this action. UF 1. Nor does Plaintiff have standing. *Hodgers-Durgin v. Delavina* (9th Cir. 1999) 199 F.3d. 1037; *Munns v. Kerry* (9th Cir 2015) 782 F.3d 402, 411 (plaintiff must show that she "will again be wronged in a similar way" in the future.)

### Defendants are Entitled to Summary Judgment on the Request for Punitive Damages

Plaintiff does not directly respond to this issue, but instead invents some facts to create an

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

irrelevant theoretical situation unsupported by the evidence. Plaintiff asserts that Mr. White was "likely asphyxiated after the carotid hold was successfully placed on him, and that any kicking and thrashing he did thereafter resulted from his inability to breathe …" Opp. 19:15-17. Plaintiff cites no part of the record for any part of that conclusion. Nor is there evidence that officers were knowledgeable of such claimed circumstances. The officers summoned medical aid immediately after Mr. White was handcuffed. UF 25. Those medical personnel attempted to asses Mr. White, who kicked and screamed at them (presumably a clear sign that he was not asphyxiated), to the extent that they were unable to assess him further. UF 26. Given that these trained medical personnel were unable to determine that Mr. White had already "asphyxiated," it is impossible to imagine how these police officers would have recognized such a situation, or what they could do about it, beyond summoning the medical help Mr. White chased away.

Plaintiff further speculates that Mr. White was already dead before he was carried out of the trailer. This theory is belied by the testimony of the officers and the medics on scene, and is in any event bizarre and irrelevant. If Mr. White was already dead, then his estate has no claim for violation of his civil rights for the act, and his daughter has no claim for interference with her familial relations, because her familial relations had already ended before this "act" took place. Plaintiff offers neither law nor fact to support the punitive damages claim.

Respectfully submitted,

GIBBONS & CONLEY

DATE:  March 17, 2016           */s/ Sean Conley*
                                SEAN CONLEY
                                Attorney for Defendants

Gibbons & Conley
ATTORNEYS AT LAW
1333 N. California Blvd
Suite 110
Walnut Creek, CA  94596
(925) 932-3600
Fax (925) 932-1623

15

DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTION    2:12-cv-01629-MCE-AC